Sidney ROSEN, Plaintiff-Appellee,

v.

James F. KAHLENBERG, d/b/a Kahlenberg-Globe Equipment Company, Defendant-Appellant.

No. 71-3529.

United States Court of Appeals, Fifth Circuit.

Feb. 20, 1973.

AINSWORTH, Circuit Judge:

This is an appeal from a judgment in favor of Sidney Rosen against James F. Kahlenberg awarding damages for infringement of a patent covering a "Precision Pump."[1] We reverse.

Prior to obtaining the patent in suit, Rosen invented a "Filling Machine" for high-speed filling of vials, ampoules, and small containers, for which United States Patent No. 2,807,213 was issued on September 24, 1957. To achieve more precise control in filling the containers, Rosen made certain improvements and sought another patent. In this connection a series of claims by Rosen was rejected by the Patent Office for lack of new invention. Finally, his eleventh claim was approved by the Patent Office, and United States Patent No. 2,907,614 issued on October 6, 1957. Kahlenberg, a competitor in the field of volumetric filling machines, manufactured pumps similar to the ones patented by Rosen.

On December 7, 1966, Rosen filed this suit against Kahlenberg, alleging infringement of Patent No. 2,907,614. The District Judge, after an extensive hearing, issued findings of fact and conclusions of law on December 18, 1970, D.C., 337 F.Supp. 1075, upholding the validity of the Rosen patent and finding infringement by the Kahlenberg pump. Further hearings on damages led to final judgment for $16,997 against Kahlenberg.

Our decision is based on two principal considerations. First, we hold that the accused Kahlenberg pump does not fall literally within the terms of the claim of the Rosen patent. Second, Rosen cannot prevail under the doctrine of equivalents, because an examination of the prior art as well as the file wrapper in the Rosen patent file convinces us that the doctrine is inapplicable.

Stefan M. Stein, Tampa, Fla., for defendant-appellant.

John C. Malloy, Miami, Fla., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

---

1. The District Judge also held that Rosen was entitled to a permanent injunction against any future infringement by Kahlenberg.

## I.

■■ Article I, section 8, clause 8 of the Constitution authorizes Congress "To promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries." Under this authority Congress requires the applicant for a patent like the one in the present case to include a claim pointing out the subject matter of the invention, specifications explaining the process of making and using it, and drawings illustrating the invention. 35 U.S.C. §§ 111–113 (1971). The claim circumscribes the rights of the patent much like a description in a deed limits the boundaries of property. McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 78, 35 L.Ed. 800 (1891); Koykka, Infringement of Patents, 42 F.R.D. 43, 44 (1968). The specifications and drawings may be consulted to help interpret the claim. Permutit Co. v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163 (1931); Bates v. Coe, 98 U.S. 31, 38, 25 L.Ed. 67, 71 (1878); Autogiro Co. v. United States, 181 Ct.Cl. 55, 63–64, 384 F.2d 391, 397–398 (1967).

■ The claim reads as follows:

A pump assembly in which a piston is adapted to reciprocate within a cylinder for pumping fluids comprising, a cylinder, means at one end of the cylinder through which the fluid is received and discharged, the other end of the cylinder having an opening for slidably receiving a piston rod which extends partly within and without the cylinder, said piston rod comprising an inner rod member and an outer sleeve member, the inner rod member having fixed to its end within the cylinder the innermost end of a piston, the opposite end of the piston comprising a bushing having a central aperture slidably receivable over the inner piston rod member, each piston end being slightly less in diameter than the inner diameter of the cylinder, a shoulder fixed inwardly from the fixed innermost end of the piston and about the end of the inner piston rod adjacent the fixed end of the piston and of larger diameter than the piston rod for receiving a plurality of elastic compression rings in which at least the center rings are of V cross-sectional form with flat side surfaces, the rings being of such width as to fill the space between the shoulder and the inner surface of the wall of the piston, the bushing end of the piston having a recess in its surface adjacent the shoulder for receiving a portion of the shoulder adjacent thereto to allow the bushing to be moved inwardly over the shoulder for a predetermined distance against the compression rings without interference from the shoulder, the sleeve member of the piston rod telescoping the inner rod member from the slidable bushing end of the piston to a point without the piston adjacent the outer end of the inner rod member having its end within the cylinder abutting the surface of the bushing end of the piston about the aperture and opposite the compression rings, the outer end of the inner piston rod member beyond the opening in the cylinder being provided with an external thread and the outer end of the sleeve piston rod member beyond the opening in the cylinder being provided with an internal thread for threadably receiving the threaded end of the inner rod member for fixing the two piston rod members relative to each other and means for locking the two piston rod members in adjusted position, whereby by adjusting the sleeve member relatively to the inner member the sleeve member moves the bushing end of the piston relative to the fixed end of the piston for regulating the pressure on the compression rings and means on the

outer end of the inner piston rod member for connecting the same to a crank mechanism.

The pertinent drawings (as explained in the specifications [2]) are shown as follows:

2. The specifications provide:

The present invention relates to an improved reciprocating pump for pumping predetermined amounts of fluids and particularly to the piston and the piston packing rings. The pump is the type used on filling machine as shown in Patent No. 2,807,213 dated September 24, 1957.

One object of the invention is to provide a piston having a plurality of adjustable elastic piston packing rings.

Another object of the invention is to provide a means associated with a piston supporting rod with means outwardly from the piston for applying pressure to the piston packing rings for changing the diameter of the packing rings.

A further object of the invention is to provide a simple means for making the adjustment of the pressure on the packing rings from a point outside the pump cylinder.

A still further object of the invention is to provide a pump packing ring that will have a minimum of drag on the cylinder wall.

While several objects of invention have been pointed out, other objects, uses and advantages will become more apparent as the nature of the invention is more fully disclosed, consisting in its novel construction, combination and arrangement of its several parts as shown in the accompanying drawing and particularly referred to in the description to follow.

In the drawings:

Figure I is a view in elevation of the pump as it would be carried on a support therefor.

Figure II is an enlarged vertical view of the pump, partly in section and partly in elevation showing the interior of the pump cylinder and the relative position of the pump piston in respect thereto.

Figure III is a greatly enlarged portion of the pump cylinder and piston, partly in section and partly in elevation showing the arrangement of the piston packing when first assembled and without any pressure being applied to the live members.

Figure IV is a sectional view taken on line 4—4 of Figure II.

Figure V is a fragmentary sectional view of several of the elements of the

Note 2—Continued

means for adjusting the diameter of the piston packing rings.

Figure VI is a further enlarged sectional view, similar to that shown in Fig. III, illustrating the manner in which the packing rings engage the cylinder wall after pressure has been applied to the rings.

In referring to the drawings like reference numerals are used to point out like and similar parts throughout the several views.

The pump as shown in Fig. I is adapted to operate on the type of filling machine shown in Patent No. 2,807,213 dated September 24, 1957. The pump is provided with a cylinder 10 having one end closed by the member 12. The member 12 is provided with an opening 14 for admitting a fluid to the upper end of the cylinder 10. The member 12 is hingedly connected to a member 16 which is pivotally supported upon a stationary arbor 20 carried on the supporting housing 22, and in which the mechanism is carried for operating the pump. Connected with the opening 14 is an intake pipe 24, and an outlet pipe 26. The direction of the flow of the fluid being controlled by the valves 28 and 30.

Adapted to operate within the cylinder 10 is a piston P, and connected with the piston P is one end of a piston rod R. The piston itself is composed of several parts. The upper end consisting of a plate 32, and the lower end consisting of the plate 34. These piston plates 32 and 34 are movable relative to each other to compress a plurality of elastic piston rings 36, 38, and 40. This movement of the two plates 32 and 34 is accomplished by pressing one end of a tube 42 against the bottom of the plate 34, and connected to the plate 32, is one end of a rod 44, which is adapted to extend outwardly through the tube 42, as shown best in Fig. 2. The plate 34 is provided with a hole which fits closely, but slidably over the rod 44, as drawn at 34'. Adjacent the outer end of the tube 42 there is provided a threaded arm 46, which extends beyond the end of the tube 42, and on this threaded arm there is a threaded nut 48. This nut 48 is fixed to the outer end of the tube by a drive fit, or other suitable means. By rotating the nut 48 the rod 44 and the plate 32 is adjustable relative to the tube 42 and the plate 34 respectively. The nut 46 is slotted on one side, as shown at 48''. Extending perpendicular of the slot 48'' is a screw 49 for locking the nut to the rod 44. The lower end of the threaded arm 46 is fixed to a

hinged member 50, which will be hereinafter referred to. The tube 42 and the rod 44 both make up the piston rod R. The piston rod R is guided in its reciprocating movement by a collar 52 threadably attached to the lower end of the cylinder. The collar 52 also prevents the piston P from being completely withdrawn from the cylinder. However, when it becomes necessary to remove the piston, the collar may be removed by unscrewing it from the cylinder.

As mentioned hereinbefore the elastic piston rings 36, 38 and 40 are adapted to lie between the two piston end plates 32 and 34. There is also an additional ring 54 which acts only to expand the upper edges of the V-shaped ring 40. This ring 54 has a surface 54' adapted to engage the upper plate 32 and a lower V-shaped surface 54'' of approximately 45 degrees which is adapted to engage the V-shaped top surface of the ring 40, which has been described as having its upper side wall in the form of a V and at an angle of 60 degrees with the horizontal top surface of the ring. While the rings 36 and 54 are shown with a flat surface to engage the plates 32 and 34, they may be of any convenient form to engage the inner surfaces of the plates.

The packing rings being in the form of a hoop, there is provided a member 56, for filling the space of the piston inwardly from the inner edges of the rings. This member is normally fixed or made a part of the top plate 32. It will be noted that the length of this member 56 is slightly shorter than the distance created by the thickness of the packing rings, as shown best in Figs. III and VI. This is to allow for the plates 32 and 34 to be moved toward each other to compress the rings.

The pump is operated by having its closed end fixed as to location preferably on a box, or cabinet 22, by the arbor 20. The member 16 is provided with an opening 16', which slips over the arbor 20 and is held from being displaced therefrom by a screw 60 having a beveled point 60', which slidably fits into a groove cut about the arbor (not shown). This groove screw allows the member 16 to pivot on the arbor 20. The member 16 is connected to the member 12 by a pin 17, which hinges the pump cylinder in a plane parallel with the elongated axis of the arbor.

Referring again to the operation of the piston, the member 50 is hingedly connected to the member 62 by a pin 63. The member 62 is similar in construction to the member 61 at the closed end of the cylinder and operates in substantially the same manner. The member 62 is carried

To identify the parts essential for our discussion, we note that the claim describes an assembly with a *piston* composed of plastic V-shaped rings with holes in the center like doughnuts (numbered 36, 38, 40, and 54 in figures 3 and 6) enclosing a circular metal *shoulder* (numbered 56). The rings are sandwiched between two metal plates (numbered 32 and 34). Because the shoulder does not extend from the upper plate all the way down to the lower plate, there is a *recess* beneath the shoulder (visible in figure 3). A *rod* (numbered 44 in figures 2, 3, 4, and 5) extends from the shoulder down to any crankshaft which may be used to generate the reciprocating up and down motion of the piston within the cylinder. This rod is surrounded by an outer *sleeve* which extends from the lower plate down to a threaded *nut* (numbered 48 in figures 2 and 5). By turning the nut, the sleeve is pushed up or pulled down to adjust the compression on the rings. The purpose of this compression, according to the specifications and testimony in the record, is to enlarge the diameter of the

---

Note 2—Continued

on an adjustable pinion 64, which in turn is mounted eccentrically on a rotatable shaft 66, by way of an arm 68. The member 62 is held on the pinion 64 by a screw 65 having a beveled point 65'. Associated with this arm 68 are means for adjusting the pinion 64 relative to the axis of the shaft 66. The adjusting means is operated by the knurled screw head 70. By adjusting the position of the pinion 64 relative to the axis of the shaft 66, the stroke of the piston may be adjusted to different lengths and the pump may be adjusted to pump any predetermined amount of fluid for each stroke of the piston.

The intake pipe 24 is provided with a convenient inlet hose, or pipe 70 which is connected with a fluid supply and the outlet pipe 26 is connected with a convenient outlet hose, or pipe 72 through which the fluid is usually conveyed to smaller vessels, or to other vessels for filling, mixing, etc.

Referring again to the flexible piston rings, it will be noted that the upper edges 36', 38' and 40' of each of the rings 36, 38 and 40 are pressed outwardly in contact with the inner surface of the cylinder wall while the edges 36'', 38'' and 40'' are pressed against the stationary center member 56. With this arrangement the upper outer edges 36', 38' and 40' of the rings are very sensitive in their movement to increase, or decrease their diameters by the movement of the plates 32 and 34. While these rings, in Fig. VI, show their remaining surfaces out of contact with the cylinder wall, it is because the illustrations are on a very large scale. However, in actual practice the remaining surfaces 36''', 38''' and 40''' of the rings do have a wiping contact with the cylinder fall. While many types of elastic material may be used for the rings, the best material found to date is "Teflon," a trade name of E. I. du Pont, for one of their well known synthetic plastic materials.

The piston including the plates 32 and 34 and the piston packing rings 36, 38, 40 and 54 are assembled, as shown in Fig. III, with the packing ring not under pressure. The rod 44 is extended through the tubular member 42, and the nut 48 is run along the thread member 46 until the plates are moved toward each other until the plates are in contact with the rings. Further movement of the plates toward each other will begin to compress the rings forcing the piston packing rings to a point where their outer upper edges 36', 38' and 40' are moved outwardly in contact with the cylinder wall. The screw 49 is set to squeeze the two portions of the nut together to form a self-locking nut.

In operation when the piston is moved away from the closed end, fluid is drawn from the inlet pipes 28 and 70, through the opening 14 in the member 12, and into the cylinder 10. When the piston is moved in the opposite direction the fluid is forced out through the same opening 14, but through the exhaust pipes 26 and 72.

This type of piston packing ring is very efficient in its operation and is easily adjusted to fit the cylinder wall from outside the cylinder.

While the invention has been shown and described in a specific form, it is not intended as a limitation, as the scope of the invention is best defined in the appended claims:

·    ·    ·    ·    ·

References Cited in the file of this patent

UNITED STATES PATENTS

1,474,201 McMahon ........Nov. 13, 1923
1,744,565 McMahon ........Jan. 21, 1930
1,806,078 Miller ..........May 19, 1931
2,420,929 Buffington et al. ..May 20, 1947
2,600,061 Lord ..........June 10, 1952
2,757,994 Snyder .........Aug. 7, 1956
2,807,213 Rosen .........Sept. 24, 1957

rings by an external adjustment and thereby seal any leaks without dismantling the assembly.

Kahlenberg contends that there are two differences between his pump and the Rosen pump shown in the drawing. First, whereas Rosen's lower metal plate in the piston is concave so as to slide up over the shoulder when the nut is tightened, Kahlenberg's lower metal plate is flat so it only moves up to the bottom of the shoulder rather than over it. The following drawings graphically illustrate the first contention:

 

**ROSEN**          **KAHLENBERG**

Second, Rosen's sleeve is fastened to the threaded nut. Kahlenberg's sleeve is not fastened to the threaded nut, so the sleeve may be pushed up by turning the nut but cannot be pulled down by turning the nut, as shown on the following drawings:

**ROSEN**               **KAHLENBERG**

The District Judge referred to the language of Rosen's claim and decided that the claim described Kahlenberg's pump despite these differences between Rosen's drawing and Kahlenberg's pump.

With respect to the first difference, the claim speaks about "the bushing end of the piston having a recess in its surface adjacent the shoulder for receiving a portion of the shoulder adjacent thereto to allow the bushing to be moved inwardly over the shoulder for a predetermined distance against the compression rings without interference from the shoulder." Rosen contended in the District Court that the term bushing means not just the lower metal plate but also the portion of the compression rings surrounding the rest of the recess below the shoulder, as demonstrated by the

darkened areas in the following drawings of both pumps.[3] Through this definition Rosen's claim does cover Kahlenberg's pump. It has a recess in the bushing end of the piston, and the bushing moves inwardly over the shoulder.[4]

 

ROSEN    KAHLENBERG

This definition, however, is inconsistent with the use of the word bushing elsewhere in the claim. In the above passage the bushing is said to move against the compression rings, so the bushing must be something other than the compression rings.[5] Also, the passage does not merely state that the bushing end has a recess; rather, it states that the bushing end has a recess in its surface, namely, in the surface of the metal plate. Kahlenberg's pump has no recess in any surface.

In an earlier part of the Rosen claim, the lower end of the piston is said to comprise a bushing; it does not say that the lower end is part of a bushing. Then the claim states that both the upper and lower piston ends are slightly less in diameter than the inner diameter of the cylinder, whereas the compression rings are said to fill the space between the shoulder and the inner surface of the wall of the piston; thus the bushing has a diameter different from the diameter of the compression rings.

To make certain that the word bushing does not include the compression rings, we examined the terminology in the prior rejected claims in the Rosen application to the Patent Office. The antecedent claim nine[6] thereof reads es-

3. Thus Rosen's attorney stated: "I think that the [darkened area] does truly and fairly and accurately show, in each of these, what is by definition a 'bushing'."

4. As an alternative position, Rosen seems to say that even if the term bushing means only the lower metal plate the claim still covers Kahlenberg's pump. "The recess is in the bushing *end* of the piston as called for by the claim notwithstanding appellants' insistence that it must be in the *bushing* itself." Brief for Plaintiff-Appellee at 8–9. But this position overlooks the next element in the claim, namely, that the bushing move "over the shoulder." Certainly, Kahlenberg's lower plate does not move over the shoulder. Thus Rosen can only show literal infringement by convincing the Court that the term bushing includes both the lower plate and part of the compression rings surrounding the recess.

5. Consistent with the claim, the specifications state that the "movement of the plates toward each other will begin to compress the rings."

6. A comparison of the language of Rosen's claims nine and eleven reveals what tranpired. We set forth below claim nine as altered by claim eleven. We have stricken language no longer contained in claim eleven, and added in brackets new language in the later claim, viz:
A pump assembly in which a piston is adapted to reciprocate within a cylinder for pumping fluids comprising a cylinder, means at one end of the cylinder through which the fluid is received and discharged, the other end of the cylinder having an opening for slidably receiving a piston rod which extends partly within and without the cylinder, said piston rod comprising an inner [rod member] and [an] outer [sleeve] member, the

sentially like the approved claim, but with several semantical changes. The word bushing is not used, but the word ring is used in its place. Because claim nine carefully uses the word rings in the plural form to denote the compression rings and uses the word ring in the singular form for the lower metal plate, the word ring does not include any of the compression rings. There is nothing to suggest that the substitution of the word bushing for the word ring in the approved claim was intended to enlarge the definition. Apparently the substitution was made to more clearly distinguish the metal ring from the plastic compression rings.

We find, therefore, that the term bushing connotes the lower plate in the piston, not any portion of the compression rings. Kahlenberg's bushing does not have a recess in its surface for receiving a portion of the shoulder, nor does the bushing move over the shoulder, so the pump does not literally infringe the claim.

With respect to the second difference between the drawings and the Kahlenberg pump, the Rosen claim reads: "the outer end of the inner piston rod member beyond the opening in the cylinder being provided with an external thread and the outer end of the sleeve piston rod member beyond the opening in the cylinder being provided with an internal thread for threadably receiving the threaded end of the inner rod member for fixing the two piston rod members relative to each other." This does not describe the Kahlenberg pump. The lower end of Kahlenberg's sleeve does not have an internal thread, because Kahlenberg's sleeve is not fastened to the nut. As a result, Kahlenberg cannot fix the other sleeve relative to the inner rod. This second difference between the Rosen claim and the Kahlenberg pump provides an alternative ground for finding that the pump does not literally infringe the Rosen claim.

inner [rod] member having fixed to its ~~inner~~ end [within the cylinder the innermost] ~~one~~ end of ~~the~~ [a] piston, the opposite end of the piston comprising a ~~ring~~ [bushing] having a central aperture slidably receivable over the inner piston rod member, each piston end being slightly less in diameter than the inner diameter of the cylinder, a ~~fixed~~ shoulder [fixed] ~~extending~~ inwardly from the ~~first mentioned piston end~~ [fixed innermost end of the piston] and about the ~~outer~~ end of the inner piston rod [adjacent the fixed end of the piston] and of larger diameter than the piston rod for receiving a plurality of ~~V-shaped~~ elastic compression rings [in which at least the center rings are of V cross-sectional form with flat side surfaces, the rings being] of ~~each size~~ [such width] as to fill the space between the shoulder and the inner surface of the wall of the piston, the ~~ring~~ [bushing] end of the piston having a recess in its surface adjacent the ~~to~~ shoulder for receiving a portion of the shoulder adjacent thereto to allow the ~~ring~~ [bushing] to be moved [inwardly over the shoulder for a predetermined distance] against the compression rings without interference from the shoulder, the ~~outer~~ [sleeve] member of the piston rod tele-scoping the inner [rod] member ~~having one~~ [from the slidable bushing] end [of the piston to a point without the piston adjacent the outer end of the inner rod member having its end within the cylinder] abutting the ~~outer~~ surface of the ~~ring~~ [bushing] end of the piston about the aperture [and opposite the compression rings] ~~therein~~, the outer end of the inner piston rod member [beyond the opening in the cylinder] being provided with an external thread and the outer end of the ~~outer~~ [sleeve] piston [rod] member [beyond the opening in the cylinder] being provided with [an] internal threads for threadably receiving the threaded end of the inner [rod] member for fixing the two piston rod members relative to each other [and means for locking the two piston rod members in adjusted position], whereby [by adjusting the sleeve member relatively to the inner member] the ~~outer~~ [sleeve] ~~piston rod~~ member moves the ~~ring member~~ [bushing end] of the piston relative to the ~~first mentioned~~ [fixed end of the] piston ~~end~~ for ~~compressing the V-shaped~~ [regulating the pressure on the] compression rings and means on the outer end of the inner piston rod member for connecting the same to a crank mechanism.

## II.

■■ Despite the absence of literal infringement by the defendant, the plaintiff can still prevail under the doctrine of equivalents if the plaintiff's and defendant's devices perform substantially the same function in substantially the same way to obtain the same result. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929). The reach of the doctrine beyond the articulated boundaries in the claim is determined against the context of the patent, the prior art, and the particular circumstances of the case. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950).

■ One principle precluding equivalency is known as file wrapper estoppel. The file wrapper is the file in the Patent Office including all prior claims rejected by the Patent Examiner, as well as the Examiner's reasons for rejecting the claims and the applicant's remarks in submitting new claims. If the Examiner rejects a claim for failing to disclose a new discovery and the patentee amends the claim, the patentee is estopped from recapturing the coverage surrendered by the amendment. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136, 62 S.Ct. 513, 518, 86 L.Ed. 736 (1942).

■ Another method of limiting the reach of equivalency is to assess the magnitude of the patentable discovery. The requirements for a patent are novelty, utility, and non-obviousness to a person having ordinary skill in the pertinent art. 35 U.S.C. §§ 101–103 (1971);

Anderson's-Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 59, 90 S.Ct. 305, 307, 24 L.Ed.2d 258 (1969); United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); Graham v. John Deere Co., 383 U.S. 1, 14, 86 S.Ct. 684, 692, 15 L.Ed.2d 545 (1966); Ramirez v. Perez, 5 Cir., 1972, 457 F.2d 267, 269. The range of equivalents depends upon the degree of invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 415–416, 28 S.Ct. 748, 749, 52 L.Ed. 1122 (1908). Where the patentee makes a pioneer discovery, he is entitled to broader protection than one who makes a slight improvement on the prior art. Hildreth v. Mastoras, 257 U.S. 27, 33–36, 42 S.Ct. 20, 23, 66 L.Ed. 112 (1921); McCutchen v. Singer Co., 5 Cir., 1967, 386 F.2d 82, 88; 4 A. Deller, Deller's Walker on Patents § 232, p. 82 (1965).

■ Not only is the Rosen claim not a pioneer discovery, it discloses little, if anything, which might be defined as an invention. In rejecting Rosen's first six claims, the Patent Examiner recognized that Rosen was not improving the cylinder or valve apparatus, so he suggested that applicant's claims should, therefore, be directed to the details of the piston and packing assembly. Although the beginning of the claim still mentions the pump assembly, we are only concerned with the piston head and rod.

The concept of compressible rings was anticipated by Lord, United States Patent No. 2,600,061 (1952), according to the Patent Examiner's rejection of claims seven and eight. See the drawing below:

LORD

Lord's rings are not V shaped, but the Examiner went on to cite Buffington, United States Patent No. 2,420,929 (1947). See the drawings below:

BUFFINGTON

He concluded: "In view of the teaching by Buffington, it would not involve invention to substitute the V-shaped packing of Buffington et al for the packings of Lord." In response Rosen made some critical distinctions between his device and the prior art cited by the Examiner, as follows: (1) In submitting claim nine, Rosen distinguished the prior art by showing that the center of the Buffington ring nestles smoothly against the adjacent ring, whereas Rosen's rings leave an enclosed interior space. (2) Rosen's outer compression rings 54 and 36 have flat outer surfaces parallel with the metal plates for more perfect alignment. The distinctions are illustrated by the following drawings:

BUFFINGTON

ROSEN

(3) In submitting the approved claim, Rosen distinguished the action in his plastic rings during compression from the other prior art, particular Snyder, United States Patent No. 2,757,994 (1956). In Snyder the compression forces the entire exterior portion of the rings against the cylinder wall, whereas in the Rosen device compression only forces the upper edge of the rings

against the cylinder wall, with the result that Rosen's rings cause less friction.

This third distinction is illustrated below:

ROSEN
(before
compression)

ROSEN
(after partial
compression)

SNYDER

After these arguments, the patent on Rosen's claim eleven was granted. But the Examiner did not consider the compression rings in Herbert Herkimer's text, Engineers' Illustrated Thesaurus 317 (1952):

HERKIMER
(before
compression)

HERKIMER
(after
compression)

All three of Rosen's articulated distinctions from the prior art are clearly obviated by Herkimer's illustration. Just as the Patent Examiner found no invention by Rosen in substituting Buffington for Lord, we find that in view of the teaching by Herkimer it would not involve an invention to substitute the packing of Herkimer.

The general idea of building in a method to compress the rings by adjustment from outside the cylinder dates at least as far back as a patent issued in 1923, McMahon, United States Patent No. 1,474,201, wherein the following device was said to have as one of its "several important objects . . . to adjust the pump piston packing without dismantling any part of the pump."

This leaves only the detailed method of adjustment open to patent. Rosen used an inner rod and outer sleeve extending down from the piston head, with the sleeve being adjustable. This method is anticipated by Laurent, United States Patent No. 1,222,424 (1917), shown in the margin. Rosen contends that his pump differs by virtue of the inner rod being fixed, so as not to alter volume displacement above the piston head by the adjustment. Yet the change seems obvious from Laurent, since Rosen merely fastened the threaded inner rod to a crankshaft and substituted a threaded nut for the threaded handle.

■ However, Rosen's pump attaches the outer sleeve to the nut, unlike Laurent's and Kahlenberg's devices. This difference is important for as Rosen himself testified about the superiority of his pump:

A. Oh, yes. We felt it had some advantages. That is the reason we did it.

Q. What are the advantages?

A. The advantages that you are not depending upon gravity to have the sleeve member lower when you—

Q. Retract.

A. —retract—when you loosen up the nut.

Q. So what is wrong with having gravity permit that sleeve from dropping?

A. Well, if you are pumping material like syrup, for example, or any other viscous material, [sic] may find its way between the sleeve member and the threaded rod and prevent it from dropping by gravity.

Q. Can't you grasp it right here?

A. Not too well. If it were stuck—if this material found its way between the threaded portion of the rod, it would seize. You wouldn't be able to grasp it. You only have a smooth, sliding member. You wouldn't be able to move it if it froze.

**LAURENT**

Thus the difference between the Rosen claim and the Kahlenberg pump is more than mere form. The two pumps do not function in substantially the same way, so they are not equivalents. Moreover, the difference in the Kahlenberg pump places it in the category of the prior art, giving Kahlenberg absolute protection against the doctrine of equivalents. A patentee cannot enlarge his claim to

reach into an area which is not patentable, that is, into an area anticipated by the prior art.

▮ Finally, we reach the space, between the shoulder and the lower piston plate, called the "recess." This area is closed off as the end plates are compressed together. The location of this recess beneath the shoulder appears to be traceable back to the early part of the century, as clearly disclosed by this French patent in the margin of M. Manfred Balteschwiler, No. 398,899, issued in 1909.[7] Rosen's advance appears to be the cupping of the lower plate, so that about half the recess lies in the metal bushing, unlike the Kahlenberg device and the French patent where all the recess is in the compression rings. As the claim points out, Rosen's bushing can then move "against the compression rings without interference from the shoulder." Presumably, this means that the compression rings are kept in better alignment in the Rosen device, as illustrated below, since the rings will be surrounding and smoothly sliding up the shoulder during compression, rather than bulging out between the shoulder and bushing to cause a bind in the adjustment. Again, we see that Rosen's and Kahlenberg's pumps are not equivalents, because they have another functional difference. Furthermore, Kahlenberg's method is obvious. from the

BALTESCHWILER

ROSEN
(after partial
compression)

---

7. A foreign patent is relevant as prior art according to 35 U.S.C. § 102(a) (1971): "A person shall be entitled to a patent unless . . . the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent . . . ."

872

French patent and thus falls outside the possible range of equivalents.

In summary, we find substantial differences between the Rosen claim and the Kahlenberg device, contrary to appellee Rosen's assertion here on appeal that the "[a]ppellants' commentary on the infringement issue relates essentially to immaterial trivialities in design and truncated speculations in semantics." When the words are defined so as to be consistent with their use in the entire claim and file wrapper, they show convincingly that the Rosen claim does not describe the Kahlenberg device. The differences become important, because a comparison between the claim and the prior art discloses that Rosen made no advance other than in the two areas of the claim where the differences are located, and whatever advance there is in these precise areas is so narrow as to deserve little protection beyond the boundaries of the claim. Here Kahlenberg did not copy the characteristics making up the Rosen invention but rather designed a device in the realm of the prior art.

Reversed.