Jerry F. CONNELL, et al., Plaintiffs,

v.

SEARS, ROEBUCK AND COMPANY, Defendant.

Civ. A. No. 81–C–0496–M.

United States District Court, N.D. Alabama, S.D.

Feb. 11, 1983.

As Corrected March 8, 1983.

Douglas Burns, Thomas E. Davis, Gadsden, Ala., for plaintiffs.

Walther E. Wyss, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., James C. Inzer, III, Gadsden, Ala., for defendant.

## MEMORANDUM OF DECISION GRANTING SUMMARY JUDGMENT NOTWITHSTANDING THE VERDICT

CLEMON, District Judge.

### Introduction

This case involves the validity and alleged infringement of United States Letters Patent No. 3,459,199 ('the '199 patent'), issued in 1969 to plaintiff Jerry F. Connell[1] for a "teasing and unsnarling implement" for hair. Connell claims that various hair curlers sold by defendant Sears, Roebuck and Company ("Sears") infringe its patent. The case was tried to a jury, which made "special written findings upon each issue of fact." Fed.R.Civ.P. 49(a). The jury's findings indicate that the '199 patent is valid and enforceable; and that the designated Sears curlers infringe the patent in suit. Sears has now renewed its motion for a directed verdict made at the close of the evidence, and it has moved for judgment notwithstanding the verdict. Because the jury's key findings of validity and infringement are unsupported by substantial evidence, the motions will be granted and judgment entered for Sears.

The patent in suit embraces five claims. Only two of those claims (Claim One and Claim Five) are involved in this case. Plaintiffs contend that the hair curlers included in four complete appliance packages[2] marketed by Sears infringe these two claims of the patent in suit. Sears responds that its curlers ("the accused devices") do not infringe the claims of the patent in suit; and that if the claims are construed to read

---

1. Plaintiff Conelco, Inc., is the exclusive licensee of the patent in suit; Jerry Connell and plaintiff Gary F. Burns are the sole stockholders of Conelco.

2. Model Nos. 2525, 2526, 2545, and 2570.

on the accused devices, then the patent in suit is invalid, because its claims are both "anticipated by the prior art" and "obvious," under the patent laws of the United States. 35 U.S.C. §§ 102, 103. Further, Sears maintains that if the claims are construed to read on the accused devices, the patent is invalid for failure to properly describe the subject matter of the invention—a requirement of 35 U.S.C. § 112. Finally, Sears insists that the patent in suit is unenforceable.

While a finding of non-infringement by Sears could dispose of this case without reaching the issue of the validity *vel non* of the patent, this Court is admonished that the public interest is best served by an initial determination of the validity of the patent in suit.[3] *I.U. Technology Corp. v. Research Cottrell, Inc.*, 641 F.2d 298, 301 (5th Cir.1981); *Harrington Mfg. Co. v. White*, 475 F.2d 788, 793 (5th Cir.1973).

### THE VALIDITY VEL NON OF THE PATENT IN SUIT

#### The Legal Principles [4]

Under the United States Constitution, Congress is authorized "To promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries." U.S. Const. Art. I § 8 Clause 8. It is pursuant to that authority, and in derogation of the common law, that Congress has bestowed on the United States Patent Office the power to grant to an inventor a monopoly over the use of his invention for a period of seventeen years. 35 U.S.C. §§ 1–41. A valid patent, once issued, protects the inventor against the unlicensed use of his device or process, even by one who properly discovers it through independent research. The core of a patent is the right, which it confers upon its holder, of invoking the power of the government to prevent others from using the invention without his consent.

■ The purposes of the nation's patent laws are several. Obviously, one of the major purposes is to foster and reward invention. Further, these laws promote the disclosure of inventions, and they stimulate further invention. Once the patent expires, the laws contemplate that the public be permitted to practice the invention; and that ideas in the public domain remain there for the free use of the public. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1971).

■ The function of a patent, then, is to add to the sum of useful knowledge; a patent is not valid where, on the contrary, it subtracts from former resources freely available to skilled artisans. *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

■ Not every invention, however, is patentable. Rather, the patentability of an invention is dependent upon three specific requirements: novelty, utility, and non-obviousness. 35 U.S.C. §§ 101, 102, 103. To be patentable, an invention must first be "new"; and in general, § 102 of Title 35 sets out the basic standards for assessing novelty. An invention is not "new," for patentability purposes, if it were ". . . known or used by others in this country or patented or described in a printed publication in this or a foreign country. . . ." Further, the invention is not new if it were ". . . described in a printed publication or in public use or on sale in this country, more than one year prior to the date of the application for a patent." If this "prior art" anticipates the invention, then it is not patentable.

---

**3.** At least one other case presently pending in this court raises the issue of validity of the patent in suit. *Connell v. K-Mart, Inc.*, No. 82–C–1261–M (N.D.Ala.). Three other cases posing the same issue have been settled in advance of trial. *Connell v. Gillette*, No. 81–796 (N.D.Ga.); *Connell v. General Electric*, No.

72–38–S (N.D.Ala.); *Connell v. Clairol*, No. C75–570A (N.D.Ga.).

**4.** This Court is bound by the decisions of the former Fifth Circuit that were issued before October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*).

In determining whether the prior art anticipates the invention, the courts must scrutinize the claims of the patent, and not a particular commercial embodiment of them, for "the claims measure the invention." *General Electric Co. v. Wabash Appliance Corp.,* 304 U.S. 364, 368–69, 58 S.Ct. 899, 901–02, 82 L.Ed. 1402 (1938). Since the patentee's right to exclude others from the use of his invention depends on the scope of his claims, he should be prepared to defend those claims against charges of anticipation. *Arbrook, Inc. v. American Hosp. Supply Corp.,* 645 F.2d 273, 276 (5th Cir.1981).

The prior art claimed to have anticipated an invention must be evaluated according to what it fairly teaches one skilled in the art. Although disclosures of the prior art may fall short of "complete anticipation," anticipation may nonetheless be found where one of ordinary skill in the art may, by the exercise of that skill and relying on the teachings of the prior art, complete the work required for the invention. *Ludlow Corp. v. Textile Rubber & Chem. Co., Inc.* 636 F.2d 1057, 1059 (5th Cir.1981). While anticipation is established where all of the elements of the patented device or their equivalents be found in a single prior device, ". . . it is sufficient for anticipation 'if the general aspects are the same and the difference in minor matters is only such as would suggest itself to one of ordinary skill in the art.'" *Deep Welding, Inc. v. Sciaky Bros. Inc.,* 417 F.2d 1227, 1234 (7th Cir.1968).[5] Moreover, these elements or their equivalents must function in substantially the same way to produce substantially the same result. As a general rule of thumb, that prior art which would infringe if it came later, anticipates if earlier—i.e., if it precedes the invention. *Id.* 60 Am.Jur. Patents § 23.

The question of anticipation by prior art structures is largely one of fact. *Lai-tram Corp. v. Deepsouth Packing Co.,* 443 F.2d 928, 932 (5th Cir.1971).

The second patentability requirement is that of utility. The new device must be "useful"—that is, it must be capable of being practically used for the purpose for which it was invented. *Smith v. Nichols,* 88 U.S. (21 Wall.) 112, 22 L.Ed. 566 (1875). No particular degree of utility is required; and if a patented invention has any degree of usefulness, the patent is not void for want of utility. 1 Deller's Walker on Patents (2d ed.), § 87. The commercial success of a patented device is highly probative, but not conclusive, evidence of its utility; but a lack of commercial success does not establish, *per se,* a lack of utility. *Gandy v. Main Belting Co.,* 143 U.S. 587, 12 S.Ct. 598, 36 L.Ed. 272 (1892); *Technical Tape Corp. v. Minnesota Mining and Mfg. Co.,* 143 F.Supp. 429 (S.D.N.Y.1976), aff'd, 247 F.2d 343 (2d Cir.1957). The nonuse of a patented device may be considered in determining its utility; but that factor is never decisive. *Rown v. Brake Testing Equipment Corp.,* 50 F.2d 380 (9th Cir.1930); *Universal Oil Products Co. v. Globe Oil & Refining Co.,* 137 F.2d 3 (7th Cir.1943).

Finally, a patentable invention must be non-obvious. Under 35 U.S.C. § 103, a new and useful invention is not patentable

". . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

"Obviousness" is to be determined as of the time the invention was made.

In determining obviousness, the United States Supreme Court, in the seminal case *Graham v. John Deere Co.,* 383 U.S. 1, 86

---

5. But see *Continental Oil Co. v. Cole,* 634 F.2d 188, 195 (5th Cir.1981) in which the Circuit seemingly approved of language requiring a showing of actual identity in the prior art, citing *Yoder Bros. Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1377 (5th Cir.1976). *Id.,* n. 4. In *Ludlow, supra,* decided one month after *Continental Oil,* the Circuit opined that complete anticipation is not always required. One difference between the cases is that one involved a patented device (*Continental Oil*) and the other a patented process (*Ludlow*).

S.Ct. 684, 15 L.Ed.2d 545 (1966) has held that three factual inquiries must be made: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. *John Zink Co. v. National Airoil Burner Co.,* 613 F.2d 547 (5th Cir.1980). An examination of the prior art may result in an invention being obvious, even though it was not anticipated,[6] because obviousness relates to the "inventiveness" of the device, while anticipation speaks only to its novelty.

■■■ Where a combination patent, such as the patent in suit, is involved, the linchpin is not whether the individual components of the patent were obvious at the time of the invention, but whether the aggregation produced a new or different result or achieved a synergistic effect. *Ingersoll-Rand Co. v. Brunner & Lay, Inc.,* 474 F.2d 491, 494 (5th Cir.1973). It has been appropriately observed:

> No matter how much skepticism an invention is met with and no matter how much acclaim it eventually receives as an innovation, if the elements comprising the invention are disclosed by an examination of the prior art, it is irrelevant that no one previously availed himself of the knowledge.

*Hart v. Baarcke,* 396 F.Supp. 408, 414 (S.D. Fla.1975), *aff'd,* 550 F.2d 353 (5th Cir.1977).

■■■ The prior art that must be considered includes not just the prior art in a specific field, but the prior art in analogous fields as well. Obviousness is established when features that distinguish the patented device from the closest prior art reference are disclosed in analogous structures in which the features perform an identical function. *Cathodic Protection Service v.*

*Amex Smelting & Refining Co.,* 594 F.2d 499, 507, 510 (5th Cir.1979).

■■■ The determination of the level of ordinary skill requires a preliminary determination of what prior art is to be used by the hypothetical person who is a mechanically skilled person familiar with the design of devices in the industry. *Robbins Co. v. Dresser Industries,* 554 F.2d 1289, 1293–1295 (5th Cir.1977). Where ". . . the solution claimed to be invention is no more than the application of elementary mechanical principles," or the "innovations are the work of the skilled mechanic rather than the inventor," obviousness bars the patentability of the device. *Id.*

> Under *Graham v. John Deere, supra,* Such secondary considerations as commercial success, long felt by unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. at 17, 18, 86 S.Ct. at 693, 694. Where analysis of the three major factors unequivocally demonstrates that the patented device was obvious before it was patented, these secondary considerations need not be reached. *Whitley v. Road Corp.,* 624 F.2d 698, 701 (5th Cir.1980).

■■■ The obviousness question is one of law, which turns on the basic factual inquiries outlined in *Graham v. John Deere;*[7] *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 280, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976); *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763 (5th Cir.1980).

■■■ In applying for a patent, the applicant must conclude his specification[8] ". . .

6. *Continental Oil, supra,* at 196.

7. Apparently, our circuit does not wholeheartedly approve of the practice of submitting the obviousness issue to a jury. *Manufacturing Research Corp. v. Graybar, Elec. Co.,* 679 F.2d 1355, 1364–65, n. 19.

8. The patent application includes three parts: a specification, drawings, and an oath. 35 U.S.C. § 111. The specification

shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
35 U.S.C. § 112.

with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. The claims are the relevant unit of inquiry in patent cases, for they ". . . circumscribe the rights of the patent much like a description in a deed limits the boundaries of property." *Rosen v. Kahlenberg,* 474 F.2d 858 (5th Cir.1973). As the leading treatise on patent law states: "Claims tell what the invention is; they define it. They are statutory requirements, prescribed for the purpose of making an inventor define precisely what his invention comprises." 7 *Deller's Walker on Patents* § 445 (2d Ed.1972). Ideas or concepts disclosed and suggested by the specification and drawings are not protected by the patent unless specifically asserted in the claims. Anything disclosed or suggested by the patent but left unclaimed is dedicated to the public. *Id.,* § 509.

 Once a patent is issued, it is presumed by law to be valid; and the burden of proof of invalidity rests on the party who challenges the patent. 35 U.S.C. § 282. This presumption of validity ". . . is based on the acknowledged experience and expertise of the United States Patent Office and recognition that patent approval is a species of administrative determination supported by evidence." *Ludlow, supra,* at 1059. The party challenging the patent, that is, the alleged infringer, must prove the patent's invalidity by the highest standard of proof in civil cases—"clear and convincing evidence." *Kiva Corp. v. Baker Oil Tools, Inc.,* 412 F.2d 546, 553 (5th Cir.1969). The presumption of validity is severely weakened, however, when pertinent prior art was not considered by the Patent Office in its review of patent applications. *Cathodic Protection Service, supra,* at 505; *Gaddis v. Calgon Corp.,* 506 F.2d 880, 885 (5th Cir.1975). Any relevant uncited prior art is sufficient to erode the presumption. In such cases, the alleged infringer need only establish the invalidity of the patent by a preponderance of the evidence. *Manufacturing Research Corp. v. Graybar, supra,* at 1360–61.

 With respect to the factual issues affecting validity which are submitted to a jury, the jury's subsidiary factual findings will not be overturned if they are supported by substantial evidence. *Id.*

### The Validity Evidence

### (a) The Teaching(s) Of The Patent In Suit

In his original patent application, Jerry F. Connell described Claim One as follows:

1. A teasing and unsnarling implement including a plurality of hair-engaging elements and a support means, said support means comprising an elongate structure having a central axis extending longitudinally through the center of said structure, said hair engaging elements extending from said support means in parallel spaced relationship to one another (sic) each said element comprising a set of teeth extending radially outwardly from said support means, said teeth of each said element being disposed in a common plane substantially perpendicular to said central axis and having sides tapered in a converging fashion toward the outer end thereof, thereby providing an arcuate outer surface whereby an encountered snarl may be gradually engaged and disengaged.

Claim One was rejected by the Patent Office "as clearly anticipated by the Roscher patent [Patent No. 1,486,688] under 35 U.S.C. § 102." Connell thereafter amended Claim One, to read as follows:

1. A teasing and unsnarling implement including a plurality of hair-engaging elements and a support means, said support means comprising an elongate structure having a central axis extending longitudinally through the center of said structure, said hair engaging elements extending from said support means in parallel spaced relationship to one another, and each said element comprising a set of teeth *spaced from each other along said central axis* and extending outwardly from said support means *substantially perpendicular to said central axis,* said

teeth of each said *element being aligned with each other along a line parallel to said central axis, said teeth of one of said elements being parallel to said teeth of each of said elements adjacent said one element, said teeth of said one element being aligned with the space between said teeth of said adjacent element, each of said teeth of each of said elements being wider at the point where said teeth join said support means than at the outer end of said teeth, each of said teeth having a tapering side extending from said support means towards the outer end of said teeth, each of said teeth defining a smooth surface between said side and the outer end of said teeth.*

(emphasis original). In explaining his Amended Claim One, as disclosed in the "file wrapper",[9] Connell stated that the amended claim "... sets forth the construction of the tapered leading and trailing edges of the teeth of each hair-engaging element and the displacement of the teeth from each other." Connell represented that "this specific construction of teeth and the arrangement thereof" make Amended Claim One "clearly patentable over the prior art..." Elsewhere in his amended application, Connell represented to the patent office that

> One of the most important features of the invention lies in the construction of the teeth. The teeth of the invention define leading and trailing edges which define an obtuse angle and with the support means. *This is what makes the invention advantageous over the prior art.* The leading edge of the teeth of the invention causes the hair to travel from the base toward the tip of the tooth whereas the prior art causes the hair to hang on the tooth or not move at all when the tooth is perpendicular, or causes the hair to travel toward the base of the tooth to again hang on the tooth if the tooth defines an acute angle with respect to the support on which it is mounted.

Connell included in his amended application a sketch which illustrated the difference between his invention and the prior art:

SKETCH #1

---

**9.** The "file wrapper" is the complete Patent Office file of papers relating to the patent and its prosecution history in the Patent Office, including all prior claims rejected by the Patent Examiner, as well as the applicant's remarks in submitting new claims. While the patent application is pending, the file wrapper is confidential; but once a patent is issued, it becomes public information.

PRIOR ART

HAIR TRAVEL

β

SKETCH #2

The Amended Claim One was passed for approval, and ultimately approved by the Patent Office.

Connell's original Claim Five was described as:

5. A teasing and unsnarling implement according to Claim 3 wherein said support means is cylindrical and said hair-engaging elements comprise looped bristles which are anchored to said support means in sets of three and extend from said support means at an angle of 120 degrees in relation to one another; said looped bristles having ends anchored to said support means at a distance substantially equal to one-third the circumference of said support means, thereby creating when in operation a rhythmetically intermittent translatory force against the strands of the operator's hair.

After reviewing the application, the Patent Office indicated that Claim Five "would be allowable if amended." *Id.,* p. 22. The claim was rejected as unpatentable over the Roscher patent, the Patent Office having determined that the claim "would be obvious to one of ordinary skill in the art to orientate teeth at any angle relative to one another and to supply any number of teeth." It was, however, suggested that if Claim Five were associated with an electrical power comb, incorporated the elements of Claims One and Three, and rewritten in independent form, then it might be allowable.

In response, Connell submitted an amended Claim Five,[10] it was eventually approved by the Patent Office.

At trial, Connell testified that "... the teeth are the main workable part of [his] invention." Tr. 203.

By way of summary, the relevant claims of Connell's invention were initially rejected by the Patent Office because they were found to have been anticipated by the Roscher patent, issued in 1924. The Patent Office specifically found that the orientation of teeth at any angle relative to one another and to supply any number of teeth, as provided in Connell's application, would be obvious to one of ordinary skill in the art.[11] It was only upon Connell's representation that the shape of his teeth resulted in a new function, i.e., the teasing and unsnarling of hair, that his patent application was approved.

10. A teasing and unsnarling implement including a plurality of hair-engaging elements and a support means, said hair-engaging elements extending from said support means in parallel spaced relationship to one another, each said elements comprising a set of teeth spaced along said support means parallel to each other and extending outwardly from said support means substantially perpendicular thereto, said teeth of each element defining at least one outer surface angled with respect to said support means and defining a continuous smooth edge whereby an encountered snarl may be gradually engaged and disengaged. Defendant's Exhibit ("DX") 13, p. 30.

11. DX 13, p. 23.

The teaching of the '199 patent, when narrowed to its Claim One and Claim Five may be summarized: hair may be teased and unsnarled by rotating through it a support means on which tapered teeth are mounted in a staggered fashion. Put another way, by using a roller mounted with tapered teeth arranged in staggered rows, one may tease and unsnarl her hair.

(b) Scope And Content Of The Prior Art

The earliest known prior art disclosed by the evidence is the Roscher patent. This patent relates to "certain improvements in combs." It teaches the use of combs containing teeth "substantially oval in form, with the wider end outwardly exposed, the periphery of each of the teeth being relatively broad." The Roscher teeth are illustrated:

As shown elsewhere in this opinion, the Patent Office considered the Roscher teeth to be highly relevant prior art; it was one of only two prior art references cited by the examiner in denying Connell's original patent application.

The use of staggered teeth in a plastic brush has long been known in the hair care industry, as conceded by Connell at trial. (Tr.172). In 1949, a foreign patent, the Celluloid patent (French Patent No. 954,-436) was issued for a plastic brush containing staggered teeth.

In May, 1950, the United States Patent Office issued to Nathan G. Finkelstein a patent (No. 2,507,373) for a rotatable hair treating implement. The teeth of the Finkelstein comb or brush are depicted in the patent drawing as shown:

Fig. 2.

The teaching of the Finkelstein patent is that waves and curls may be induced in the hair by the manipulation of a rotatable hair treating implement, consisting of, *inter alia,* tapered teeth. Prior to applying for a patent, Connell had been advised by his patent attorneys that the Finkelstein patent was relevant to his invention; but this patent was never called to the attention of the patent examiner, and it was not cited by the Patent Office as relevant prior art. In trial testimony, Connell conceded that the teachings of Finkelstein patent are more relevant to his invention than those of the Roscher patent.

Two years later, inventor Boland J. Meunier was issued United States Letters Patent No. 2,599,191 ("the Meunier patent" for a dental brush having looped bristles. Although the patent referred to a dental brush, it was specifically pointed out in the specification that "... shaving brushes, hair brushes, face or hand brushes may be similarly formed...." Connell was aware of the existence of this patent when he submitted his application; yet it was never cited to consider by the Patent Office.

On May 23, 1960, a French patent (No. 1,235,018) was issued to Emilio Gaglioppa of Italy, on a device for waving hair. This invention "... is formed of a roller comprising a cylindrical body of metal or plastic, hollowed the inside and provided with

radial protrusions arranged in parallel planes perpendicular to the longitudinal axis of the roller and having the shape of a star." The protrusions, or teeth, of the Gaglioppa patent ". . . have a rounded apex and are axially aligned."

The Gaglioppa drawings reflect:

The Gaglioppa patent was not considered by the Patent Office when it approved the Connell application.

In the same year that it issued the Gaglioppa patent, the United States Patent Office issued its Letters No. 2,954,788 to Arthur H. Madore for a hair curler illustrated in part as follows:

The first claim of the Madore patent contains language similar to that of the patent in suit.[12] The Madore patent was not considered by the Patent Office in its review of the Connell patent application.

Also, a foreign patent was issued in 1960 to Louis Livarik for a hair curler disclosed by the following drawings:

The August 1961 issue of *Modern Beauty Shop* magazine contained an advertisement for Zotos Grip Right rollers. These plastic rollers are cylindrical in shape, hollow in the center, with rows of teeth protruding from the side of the roller. The teeth were described in the advertisement as "round teeth that grip hair better than any other roller can;" and as having "[e]xclusive round edge construction." The rollers and their teeth are illustrated:

12. Claim One of the Madore patent reads as follows:

1. A hair curler comprising an elongate tubular body; a plurality of parallel and circumferentially continuous ribs projecting radially from said body in close axially spaced relationship defining there between a plurality of unobstructed hair receiving grooves, said ribs extending substantially from end to end of said tubular body and each lying in a plane perpendicular thereto; and a series of teeth projecting racially from each of said ribs; said teeth cooperating with said ribs to separate into parallel strands the hair wound on said body.

Foreign patent, Danish Patent No. 98026, was issued in 1964 for a "hair roller for drying hair by heat." The drawings of patentee Richard Djenner reflect the following structure:

Djenner's invention consisted of, *inter alia,* an "outer body shaped as a cylinder with a large number of projections that chiefly are formed of pyramid or conical shaped spines (spikes) that at the base lie relatively close to each other.... " Djenner's patent was not cited by the Patent Office as relevant prior art.

In the month preceding the filing of the Connell application, the United States Patent Office issued Letters Patent No. 3,257,-541 to Niels C. Lorgensen for an "apparatus for heating and setting hair." The teeth, or "corrugations" of the patented device were described as "coaxial, annular or helical projections of triangular, trapegoidal, or corrugated cross section." Claim Eleven of the Jorgensen patent specifically embraced the "corrugations extending along the outer surface of the container. These drawings depict the teeth of the Jorgensen apparatus:

The Jorgensen patent was not considered by the Patent Office when it finally approved the Connell application.

### (c) Novelty

■ Although Sears asserts that the patent in suit was anticipated by the prior art, that contention must be rejected in view of the jury's finding that there was no anticipation.[13] The jury may well have based its finding on the lack of identity of function between the prior art and Connell's teasing and unsnarling device; substantial evidence supports a finding of non-identity of function. Moreover, to the extent that the law requires [14] complete anticipation—i.e., a single prior art device embodying all of the elements of the patented device, the jury's finding is amply supported by substantial evidence.

### (d) Utility

■ The jury's finding that the patented device presents something useful must also be sustained. Sears has not carried its burden of showing that the teasing and unsnarling device is not useful; and based on plaintiff's testimony and that of his witnesses, substantial evidence supports the jury's finding that the device is "useful," within the meaning of the patent laws.

### (e) Obviousness

This Court has carefully considered the *Graham* factors relating to obviousness,

ever-mindful that the issue is ultimately one for the court rather than the jury, and that in Connell's judgment, the teeth of his invention are the most important feature of his invention.

The jury found that the evidence disclosed no relevant prior art is devoid of any evidentiary basis. For the testimony of plaintiff's witnesses established, by more than a preponderance of the evidence, that patents such as Finkelstein are more pertinent to the '199 patent in suit than the Roscher and Vrana patents cited by the Patent Office. The Court's independent review of the evidence reinforces that conclusion.

■ Since the evidence establishes that the Patent Office did not consider several highly probative, relevant prior art references in reviewing the Connell application, the presumption of the validity has been eroded; and Sears is required to establish the invalidity of the patent by a mere preponderance of the evidence, rather than by clear and convincing evidence.

■ The teachings of the prior art, as discussed and depicted in the earlier part of this opinion, make it clear that to one of ordinary skill in the art of hair care and treatment, the teasing and unsnarling implement would have been obvious.

*Lighting Inc. v. Allied Electrical Supply, Inc.,* 431 F.2d 539, 541 (5th Cir.1970)

13. Under the law of this circuit, "[a] jury verdict on the factual issue of anticipation will not be overturned unless fair-minded men could not disagree as to a contrary result." *Sterner*

14. See No. 5, *supra.*

The evidence of the level of ordinary skill in the art at the time of the Connell invention principally came from one of Sears' witnesses, who testified that the ordinary designer of appliances for curling and treating hair at the time would have had two or three years of college training, perhaps in engineering or related sciences, and a number of years of practical training. There was no evidence to the contrary. The Court finds that to such a person, the Connell principal feature of the Connell teasing and unsnarling implement would have been obvious.

The jury found the differences between the prior art and Claims One and Five of the '199 patent in suit are: visual appearance, design, and hair-engaging elements. These differences, of course, relate to the shape, design, and arrangement of the teeth. As the Patent Office said, in rejecting Claim Five: "[i]t would be obvious to one of ordinary skill in the art to orientate teeth at any angle relative to one another and to supply any number of said teeth." The Patent Office made this finding without considering several prior art references more relevant to the '199 patent in suit than the two cited by that office. The jury's finding must therefore be set aside for want of substantial evidence.

Upon consideration of the prior art references set forth above, it is manifestly clear that had these been considered by the Patent Office, the '199 patent would never have been issued, because of obviousness. Indeed, the ordinary skill of a mechanic in the hair care and treatment industry is not required; a layman can readily perceive the obviousness of the Connell invention.

Without weighing the credibility of the various witnesses, the Court is convinced that reasonable minded persons can only reach the conclusion that the Connell invention is an obvious one.

Because Sears has shown, by a preponderance of the evidence, and by reference to the three primary *Graham* factors, that the principal feature of the '199 patent in suit would have been obvious to one of ordinary skill in the art, it is unnecessary to address the secondary considerations set forth in *Graham*. It is interesting to note, however, that Connell's total success with his patent lies in his settlement prior to trial, of three infringement lawsuits. The patent in suit has never been reduced to a commercially practical form; it has had no commercial success some four years short of its expiration date.

The '199 patent in suit, is for the reasons given, declared to be invalid for obviousness.

## THE INFRINGEMENT VEL NON OF THE PATENT IN SUIT [15]

### The Legal Principles

The unauthorized making, using, or selling of an invention covered by a valid claim of a patent during the life of the patent constitutes infringement. 60 Am.Jur.2d, "Patents" § 386. There are two species of direct patent infringement: literal infringement and equivalency. *Id.*

 In determining whether a valid patent has been infringed by an accused device, the trier of fact must first look to the words of the patent claims. If the accused device reads literally on the patent claims, that is, if it "falls clearly within the claim, infringement is made out and that is the end of it." *Graver Tank & Mfg. Co., Inc. v. Linde Air Products, Inc.,* 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950). The claims of the patent must be examined "because the scope of every patent is limited to the invention described in its claims, read in light of its specifications." *Ziegler v. Phillips Petroleum Company,* 483 F.2d 858 (5th Cir.1973).

 The literal infringement of a patent is, however, rarely found in the litigated cases. *U.S. Industries, Inc. v. Otis Engineering Corp.,* 277 F.2d 282 (5th Cir.1960).

---

**15.** It is hornbook law that an invalid patent cannot be infringed. Notwithstanding the contrary indication in *Beckman Instruments v. Chemtronics, Inc.,* 428 F.2d 555, 558 n. 4 (5th Cir.1970), and in the interests of judicial economy should an appellate court uphold the jury's validity findings, the Court will address the infringement issue.

This is so because minor deviations in the structure of a patented device will defeat liability for literal infringement; and such deviations in the structure of almost any invention can be devised to elude the reach of the patent's protection. By unimportant variations of the patented invention, the patent could be rendered worthless if literal infringement were always required. To avoid this kind of frustration of the intent and rationale of the nation's patent laws, the "doctrine of equivalents" has judicially evolved. This doctrine protects the patentee from devices that differ merely in name, form, or shape from the patented invention, but perform substantially the same function in substantially the same way to obtain the same result. *Graver, supra; Ziegler, supra,* at 868; *Rosen v. Kahlenberg,* 474 F.2d 858, 867, 870 (5th Cir.1973); *Reese v. Elkhart Welding and Boiler Works, Inc.,* 447 F.2d 517 (7th Cir. 1981).

■ To determine equivalency, the trier of fact must examine (1) the scope of the prior art; (2) the essence or "heart" of the patented invention;[16] or put another way, "the step forward the invention offers," and (3) the particular circumstances of the case. *Graver, supra,* 339 U.S. at 609, 70 S.Ct. at 856; *Continental Oil Co. v. Cole, supra; Rosen, supra* at 867.

The Supreme Court has summarized the law:

> Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents.

**16.** "Decision of an infringement claim requires a court to look at the heart of the invention. If it is appropriated, the patent is infringed." *Weidman Metal Masters Co., Inc. v. Glass Master Corp.,* 623 F.2d 1024, 1030 (5th Cir.1980).

**17.** A pioneer patent is one covering a completely novel device, or a function never before

*Graver, supra,* 339 U.S. at 609, 70 S.Ct. at 856–57. The trier of fact must consider, in the case of a combination patent such as the patent in suit, the purpose for which an element is used in a patent, the qualities it has when combined with other elements, and the function it is intended to perform. *Id.*

■ Where the differences in the accused device place it in the category of prior art, the accused device has absolute protection against the doctrine of equivalents. *Rosen, supra* at 870.

■ The doctrine of equivalents may sometimes be used against the patentee. Thus, where an accused device, which reads literally on the claims of a patented invention, "is so far changed in principle that it performs the same or similar function in a substantially different way, the doctrine of equivalents may be used to restrict the claim and defeat an action for infringement." *Graver, supra,* 339 U.S. at 608, 609, 70 S.Ct. at 856, 857; citing *Westinghouse v. Boyden Power Brake Co.,* 170 U.S. 537, 568, 18 S.Ct. 707, 722, 42 L.Ed. 1136 (1898).

■ The doctrine of equivalents gives to an inventor a range of equivalents commensurate with the scope of his invention. *American Seating Co. v. Southeastern Metals Co.,* 412 F.2d 756 (5th Cir.1969); *Big "G" Distributing Co. v. Air Cleaner Service Co.,* 179 F.2d 122 (5th Cir.1950). If an invention is broad or primary in character, it will be given a correspondingly broad and liberal construction. The broadest range of protection is given to a "pioneer" or "generic" patent.[17] On the other hand, improvement patents in a crowded art are to be construed narrowly. *Harrington v. White,* 475 F.2d 788, 797 (5th Cir.1973). For a "patent may not, like a 'nose of wax' be twisted one way to avoid anticipation and

performed, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere unanticipated and non-obvious improvement over the prior art. *Ziegler, supra* at 870; *Westinghouse, supra.*

another to find infringement." *Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.,* 431 F.2d 539, 544 (5th Cir.1970).

█ Equivalency is circumscribed by another doctrine—that of File Wrapper Estoppel. Under the file wrapper estoppel doctrine, if the file wrapper [18] discloses that the patentee has surrendered claims, or amended, narrowed, or otherwise limited his claims in response to objections from the Patent Examiner, the patentee is estopped from later recapturing, through the doctrine of equivalents, that which he has surrendered. *Ziegler, supra; Rosen, supra* at 867. "A patentee's consent to the demands of the patent examiner, made to obtain his patent, operates as a 'disclaimer,' and he is thereafter bound by it." *Ziegler, supra,* citing *Schriber-Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 221–222, 61 S.Ct. 235, 239–40, 85 L.Ed. 132 (1940); 4 Deller's Walker on Patents § 234 (2d ed. 1965).

█ The patentee is not required to specify in the patent claims each of the possible uses of his invention. Instead, he is required "[to] set forth the best mode contemplated . . . of carrying out his invention." 35 U.S.C. § 112. The claims of the patent are usually not restricted to this "best mode." A patentee " . . . is not charged with a prophetic understanding of the entire field of [the] usefulness [of his invention]." *B.C. Corp. v. Watter Kidde & Co.,* 79 F.2d 20, 22 (2d Cir.1935).

Because the *quid pro quo* for the seventeen year monopoly conferred to the patentee

> is disclosure of a process or device in sufficient detail to enable one skilled in the art to practice the invention once the period of the monopoly has expired; and the same precision of disclosure is likewise essential to warn the industry concerned of the precise scope of the monopoly asserted

*Universal Oil Products Co. v. Globe Oil & Refining Co.,* 322 U.S. 471, 484, 64 S.Ct. 1110, 1116, 88 L.Ed. 1399 (1944), a generally recognized exception has developed to the non-confining nature of the "best mode" requirement. If it appears that the "best mode" is in fact the basic teaching and actual invention, or the invention claimed, then the claims of the patent will be restricted to the "best mode." "Thus, a patentee will be restricted to the use or uses indicated in the patent if that application or use is indeed the basic teaching and actual invention." *Ziegler, supra* at 872.

### The Infringement Evidence

Plaintiffs' basic claim is that the following Sears curlers infringe the '199 patent in suit:

HAIRSETTER
MODEL NO. 2545

18. See n. 9, *supra*.

 

MODEL NO. 2570

SOLD AFTER JUNE, 1981

 

MODEL NO. 2526

MODEL NO. 2525 —19/

The Connell device and its elements are depicted:

19. Apparently, Sears Model No. 2525 is an earlier version of Model 2526. The evidence does not disclose, in any event, the differences, if any, between the curlers of the two models.

The most cursory comparison of the words of Claims One and Five of the '199 patent in suit with the features of the accused devices reveals that the Sears curlers do not literally infringe the patent. Each of the claims of the '199 patent in suit commences with the words "[a] teasing and unsnarling implement." The accused devices are curlers, not teasing and unsnarling devices.

To show literal infringement, plaintiffs had the burden of establishing, by a preponderance of the evidence, that the accused devices contain all of the elements of the '199 patent in suit. Claim One of the patent in suit calls for "a support means comprising an elongate structure having a central axis extending longitudinally through the center of said structure." The drawings and specifications of the '199 patent reflect an extension of the motor shaft 28 which defines the central axis. The accused devices, on the other hand, are hollow in the center. Moreover, the '199 patent in suit shows a support 20 and separate sets of elements 22, each element being composed of three teeth 24. The accused devices contain no such plurality of elements; rather, each of them is a molded device in which the teeth are integral with the support means. There is no element, in any of the accused devices, composed of three teeth.

In short, plaintiffs' claims of literal infringement, and the jury's implicit findings on those claims, must fall for want of substantial evidence that the accused devices literally read on the claims of the '199 patent in suit.

The remaining question, then, is whether the Sears curlers are equivalents of the Connell teasing and unsnarling imple-

ment. The prior art is discussed in pp. 239–243, *supra,* and need not be repeated here. It is sufficient to summarize that the art in existence at the time of the filing of the application for the '199 patent in suit, included cylindrically shaped plastic hair rollers with rows of protruding tapered, and the use of staggered, teeth in combs and brushes. The "heart" of the '199 patent, according to its inventor, is the shape, design and arrangement of its teeth.

It was plaintiffs' burden to show, by a preponderance of the evidence, that the accused devices function as teasing and unsnarling implements. Connell, the inventor, did not testify that the accused devices are or may be used as teasing devices; and one of his experts, Professor Harold Lee Johnson, candidly confessed that he was not enough of an authority to know whether the accused devices could be used as teasing devices. (Tr. 310).

There was some evidence tending to indicate that the accused device may perform an unsnarling function. But Connell testified that if a woman uses an ordinary comb to comb out her hair before using either of the accused structures, the tangles would already have been removed by the time that the accused devices are used. (Tr. 223, 224).

Dr. Johnson testified that the unsnarling feature is "specially included" in the Sears curlers, ". . . so that the lady could roll up her hair, have the curler set, then get it promptly out of her hair without tangling it." Tr. 284. Here, Dr. Johnson is referring to the shape of the teeth, which, in his judgment, "is the secret to the non-tangling feature." DX 168, ¶ 1; DX 170, ¶ 2. As discussed earlier, the shape of the teeth in the '199 patent do not distinguish over prior art. Moreover, based on Dr. Johnson's testimony, the unsnarling feature is "the most important feature of the Connell device." Tr. 283. To the extent that the feature is incorporated in the accused devices by vir-

tue of the shape and arrangement of their teeth, it is only incidental to their principal function.

Connell regards the principal utility of his invention as that of "teas[ing] hair in a gentle but speedy manner." [20] DX 10.

Since the Sears curlers do not solve the problem for which the patent in suit was designed (i.e., the teasing and unsnarling of hair), the requisite identity of function is absent.

Plaintiffs have offered no evidence that the '199 patent in suit is entitled to the broad construction afforded a pioneer patent. Quite to the contrary, the evidence establishes that the invention is but one in the crowded field of hair care and treatment devices.

A comparison of the accused devices with the prior art devices (pp. 240–242, *supra* ), leads to the unerring conclusion that the Sears curler is much more closely related to the prior art than to the '199 patent in suit.

The file wrapper indicates that Connell amended his original Claim One by particularly describing the design, arrangement, and shape of the teeth of each element. On the basis of this amended description, Claim One was approved. As discussed earlier, the design, arrangement, and shape of the teeth of the '199 patent in suit would have been obvious to one of ordinary skill in the art. Presumably, on the basis of Connell's representation that the teeth of his invention would enable the user to tease hair, the patent was finally issued.

Claim Five of the '199 patent in suit differs from Claim One only in its description of angled teeth "defining a continuous smooth edge whereby any encountered snarl may be gradually engaged and disengaged." The file wrapper reveals that Claim Five was allowed by the Patent Of-

---

**20.** In his advertisements sent to retailers in an unsuccessful effort to market his product, Connell constantly refers to the teasing function of his invention. In one of these, DX 16, Connell refers to the teasing function of the invention seventeen times in its three pages. The un-

snarling function is referred to roughly seven times in the document. DX 80 further establishes the inventor's concept that teasing, and, to a lesser degree, unsnarling, are the sole function of his invention.

fice only because it is associated with an electrical power comb.

Although Connell realized, during the process of experimenting with his invention, that the device might be used to curl hair, the file wrapper and the letters patent disclose that he did not claim that use of his device. His failure to claim that use of his invention is completely understandable; for had he done so, the patent examiner would likely have discovered the pertinent prior art curling devices discussed earlier in this opinion; and the patent would not have issued for want of anticipation and obviousness.

Having claimed a teasing and unsnarling function to avoid anticipation and obtain a patent Connell may not now twist the nose of the patent and claim a curling function as a basis for infringement. He is estopped by the file wrapper.

Under all of the circumstances, the Court concludes that the claims of the '199 patent in suit must be restricted to the teasing and unsnarling function of the Connell device, for it is indeed the basic teaching of the invention. In the absence of that function, a patent would not have issued in light of the pertinent prior art.

For want of substantial evidence, the jury's findings that the Sears curlers infringe the '199 patent in suit must be set aside. The Court concludes, without assessing the credibility of the witnesses, that reasonable-minded persons could only conclude that there has been neither literal nor equivalent infringement of that patent, based on the evidence. The plaintiffs have simply failed to carry their burden of showing, by a preponderance of the evidence, that the '199 patent in suit has been infringed.

### THE ENFORCEABILITY VEL NON OF THE PATENT IN SUIT

██ The jury found that the '199 patent in suit is enforceable. If sitting as the trier of fact, the Court would find otherwise; based on the dealings between plaintiffs' counsel and the Patent Office. However, the role of the court on this issue is limited to determining whether the finding is supported by substantial evidence. The Court finds substantial, though not overwhelming, evidence for the jury's finding; and, accordingly it will not be disturbed.

### CONCLUSION

The Court concludes that the '199 patent in suit is invalid and not infringed. While plaintiffs' dealings with the Patent Office in applying for a patent do not render the patent unenforceable, the invalidity and non-infringement of the patent accomplish the same result.

By separate order, a final judgment embodying these conclusions shall issue.

### FINAL JUDGMENT

Based on the accompanying Memorandum of Opinion, it is hereby ORDERED, ADJUDGED, DECLARED and DECREED as follows:

1. United States Letters Patent No. 3,459,199 is invalid for obviousness.

2. Alternatively, United States Letters Patent No. 3,459,199 is not infringed by the hair curlers contained in Hair Curling Appliance Model Numbers 2525, 2526, 2545, and 2570 marketed by defendant Sears, Roebuck and Company.

3. Plaintiffs shall have and recover nothing of the defendants.

4. The costs of this action are hereby assessed against plaintiffs JERRY F. CONNELL, GARY F. BURNS, and CONELCO, INC., jointly and severally, for which let execution issue.