Jerry F. CONNELL, Gary F. Burns and Conelco, Inc.,
Appellants/Cross-Appellees,

v.

SEARS, ROEBUCK & CO., a Corporation, Appellee/Cross-Appellant.

Appeals Nos. 83–841, 83–842.

United States Court of Appeals, Federal Circuit.

Nov. 23, 1983.

1544

Thomas E. Davis, Gadsden, Ala., argued for appellants.

Walther E. Wyss, Chicago, Ill., argued for appellee. With him on brief were Neil M. Rose and C. Ronald Olbrysh, Chicago, Ill.

Before MARKEY, Chief Judge, SMITH, Circuit Judge, and COWEN, Senior Circuit Judge.

MARKEY, Chief Judge.

Jerry F. Connell, et al. (Connell), appeals from a judgment notwithstanding the verdict (JNOV) of the United States District Court for the Northern District of Alabama Middle Division holding U.S. Patent No. 3,459,199 (the '199 patent), issued in 1969 for a hair "teasing and unsnarling implement", invalid for obviousness under 35 U.S.C. § 103, and finding noninfringement by certain hair curler devices. Sears, Roebuck and Co. (Sears), cross appeals the judgment that the patent was not unenforceable for fraud, and a denial of costs. We affirm in part, modify in part, and vacate and remand in part.

## Background

On March 24, 1981, Connell sued Sears, charging that various hair curlers sold by Sears infringed the '199 patent. Sears denied infringement and counterclaimed for a declaratory judgment that the '199 patent

was invalid. A seven day jury trial was conducted in September 1982. Proceeding under Fed.R.Civ.P. 49(b), the trial court submitted to the jury forms for a general verdict and fifteen written interrogatories. The jury made special written findings, Fed.R.Civ.P. 49(a), and indicated that the '199 patent was valid, enforceable, and infringed by the accused curlers. The jury found that Connell had not concealed "material" prior art and that no fraud occurred in prosecution of the Connell application.

Having moved for directed verdict at the close of Connell's case, and having renewed that motion at the close of all the evidence, Sears moved for JNOV under Rule 50, Fed. Rules Civ.P., on receiving the jury verdict.

Judge Clemon entered a final judgment in Sears' favor on February 11, 1983, holding the patent invalid for obviousness and finding that the claims in suit were not infringed by the accused hair curlers, on the ground that the jury's key related findings were unsupported by substantial evidence. *Connell v. Sears,* 559 F.Supp. 229, 232 (N.D. Ala.1983).

Affirmance of the judgment as correctly granted on the basis of obviousness under § 103 makes it unnecessary to discuss here the alternative bases asserted on appeal for invalidity under §§ 102 and 112, the jury findings on which were not disturbed.

The Final Judgment of February 11, 1983 awarded costs to Sears, but on March 4, 1983 the court, without reference to that judgment, signed an Order that each party bear its own costs.

## Issues

(1) Whether there was error in granting the motion for judgment notwithstanding the verdict.

(2) Whether denial of costs to Sears amounted to an abuse of discretion.

## OPINION

(1) *The Trial Court Did Not Err In Granting Judgment Notwithstanding the Verdict*

Our review of the judgment, the accompanying opinion, the record, the prior art,

and the parties' briefs, convinces us that there is not and never has been a basis for denying the motion for JNOV filed in this case.

■ Jury verdicts must be treated with great deference. The Seventh Amendment to the Constitution preserves the right to trial by jury in suits at common law and also provides that United States Courts shall not re-examine facts tried by jury except under the rules of common law. With the merger of law and equity, denial of the right in certain types of cases ceased. Permitting the jury to draw legal conclusions based on the jury's fact findings and reached in light of instructions on the law has been preserved as part of the right. The court, though it remains ultimately responsible for upholding the law applicable to the facts found, cannot substitute its view for that of the jury when to do so would be an effective denial of the right to trial by jury.

■ Deference due a jury's fact findings in a civil case is not so great, however, as to require acceptance of findings where, as here, those findings are clearly and unquestionably not supported by substantial evidence. To so hold would be to render a trial and the submission of evidence a farce.

■ Following a civil jury trial, a jury may return a naked general verdict for one of the parties. That verdict involves a presumption that the jury found the facts and reached the legal conclusions undergirding its verdict. That practice leaving a wide area of uncertainty on review, appellate judges have expressed grave concern over use of the general verdict in civil cases. Still, there are safeguards and alternatives. Rule 49(a) Fed.R.Civ.P., provides for special verdicts in which the jury answers specific fact questions. Rule 49(b) provides for general verdicts accompanied by the jury's answers to interrogatories. Rule 50(a) provides for a directed verdict at the close of the case presented by one side. Rule 50(b) provides for a judgment notwithstanding the jury's verdict such as that with which we here deal. Rule 51 provides for instructions to the jury on the law to guide its conclusions on legal questions. Rule 52

makes clear that the court must make its own fact findings and reach its own conclusions of law when sitting with an advisory jury. Rule 59(a) provides for a new trial on many grounds, including a determination that a jury had reached its verdict as a result of passion and prejudice. In sum, the right to trial by jury in a civil case carries with it a number of procedural safeguards insuring the parties and the system against an improper outcome that might result from a posited unruly or "rogue elephant" jury. The rules have thus strengthened the right by insuring the reliability of jury verdicts.

To govern consideration of motions for a directed verdict and for judgment notwithstanding the verdict, guidelines consistent with the Seventh Amendment and the cited Rules have been set forth in the cases. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc); *Mays v. Pioneer Lumber Corp.* 502 F.2d 106, 107 (4th Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975); *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 891 (4th Cir.1980).

■ Under these guidelines, a court must: (1) consider all the evidence; (2) in a light most favorable to the non-mover; (3) drawing reasonable inferences favorable to the non-mover; (4) without determining credibility of witnesses, and (5) without substituting its choice for that of the jury between conflicting elements in the evidence. The court should not be guided by its view of which side has the better case or by what it would have done had it been serving on the jury. If, after following those guidelines, the court is convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict for the non-mover, it should grant the motion for directed verdict or for JNOV.

■ The listed guidelines are fully applicable in a patent infringement suit. The court must inquire, under the proper legal standard of patentability, whether the evidence and inferences reasonably drawn therefrom, when viewed in the light most

favorable to the non-moving party and without weighing credibility, is or is not substantial. *See Pederson v. Stewart-Warner Corp.,* 400 F.Supp. 1262, 1264 (N.D.Ill. 1975), *affirmed* 536 F.2d 1179 (7th Cir.1976).

The question of obviousness under 35 U.S.C. § 103 is a question of law. *Stevenson v. ITC,* 612 F.2d 546, 204 USPQ 276 (CCPA 1979). Like all legal conclusions, that on obviousness is reached after answers to a series of potential fact questions have been found, and in the light of those answers. In the ordinary patent case, the trier of fact must answer the factual inquiries outlined in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966) and relating to: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) whatever objective evidence may be present as indicia of non-obviousness.

■■■ We hold that it is not error to submit the question of obviousness to the jury. No warrant appears for distinguishing the submission of legal questions to a jury in patent cases from such submissions routinely made in other types of cases. So long as the Seventh Amendment stands, the right to a jury trial should not be rationed, nor should particular issues in particular types of cases be treated differently from similar issues in other types of cases. Scholarly disputes over use of jury trials in technically complex cases relate to the right to trial by jury itself, and center on whether lay juries are capable of making correct fact determinations, not over the propriety of submitting legal questions to juries. The obviousness issue may be in some cases complex and complicated, on both fact and law, but no more so than equally complicated, even technological, issues in product liability, medical injury, antitrust, and similar cases. Indeed, though the analogy like most is not perfect, the role of the jury in determining obviousness is not unlike its role in reaching a legal conclusion respecting negligence, putting itself in the shoes of one "skilled in the art" at the time the invention was made in the former and in the shoes of a "reasonable person" at the

time of the events giving rise to the suit in the latter.

■■■ When a jury merely reports a general verdict for one of the parties, as above indicated, the decision on a motion for JNOV or on direct appeal requires assumptions respecting its consideration of the evidence. Submission of the obviousness question to the jury should therefore be accompanied by detailed special interrogatories designed to elicit responses to at least all the factual inquiries enumerated in *Graham, supra,* and based on the presentations made in the particular trial. In so holding, we note the similar views expressed by other courts: *Control Components, Inc. v. Valtek, Inc.,* 609 F.2d 763, 767, 204 USPQ 785, 788 (5th Cir.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980); *Velo-Bind Inc. v. Minnesota Mining & Mfg. Co.,* 647 F.2d 965, 971, 211 USPQ 926, 932 (9th Cir.), *cert. denied,* 454 U.S. 1093, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *Manufacturing Research Corp. v. Graybar Electric Co.,* 679 F.2d 1355, 1365, n. 19, 215 USPQ 29, 36, n. 19 (11th Cir.1982).

■■■ Submission of the obviousness question to the jury should also be accompanied by appropriate instructions on the law. Rule 51, Fed.R.Civ.P. Though tailoring may be required in individual cases, such instructions should track the statute, 35 U.S.C. § 103, making it clear, at a minimum, that the jury must consider the invention as a whole and that each jury person must walk in the shoes of one skilled in the art at the time the invention was made. Like all legal conclusions, that on obviousness must, as above indicated, rest on a foundation constructed of all relevant and probative facts found in light of all the evidence. If that foundation crumbles, the legal conclusion on which it rests must fall.

■■■ Thus submission of the question of obviousness to a jury does not preclude, in a proper case, the grant of a motion for JNOV. If the facts found on substantial evidence be insufficient to support or contrary to a jury's legal conclusion, or if the facts found, though they would be capable

of supporting the legal conclusion, were based on evidence less than substantial, a judge may, following the guidelines set forth above, grant the motion. The latter circumstance prevails here, where the facts underlying the jury's nonobviousness conclusion were not supported by substantial evidence.

### The Trial Court's Opinion

The reader of this opinion is respectfully referred to the exhaustive opinion published at 559 F.Supp. 229 (1983). There the reader will find, *inter alia,* a complete statement of the facts, a thorough discussion and evaluation of the two claims in suit, and the full discussion of the prior art mandated by *Graham, supra,* 383 U.S. at 17–18, 86 S.Ct. at 693–694, 148 USPQ at 67, along with numerous sketches and patent drawings.

Because the opinion correctly explicates a substantial portion of the law of patents, pause is given the fault-finder. Nonetheless, the uniformity imperative that informed the creation of this court impels a short discussion of some statements appearing in the opinion.

It should be said that most statements discussed in this section were quoted or apparently gleaned from opinions of various circuits issued before 1 October 1982. Though this court has not yet established a large body of guiding precedent, a beginning must be made toward the goal of uniformity and reliability in the patent laws. A part of that beginning involves our stating disagreement when the same is present. It bears repeating, also, that of the 18 pages comprising the trial court's opinion, the following limited portions, which did not influence the judgment appealed from and are neither defended nor attacked on appeal, are deemed sufficiently misdirected to require discussion.

The opinion says a patent is invalid if it "subtracts from former resources freely available to skilled artisans", citing *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). The meaning of the phrase is obscure. If it means an invalid patent, if enforced, would subtract re-sources that would otherwise be available, it is a mere truism. If it means that upholding a multi-element claim as valid "subtracts" those elements (resources), it is untrue. All such elements remain fully available, albeit not in the particular arrangement claimed or in appropriate equivalent arrangements.

■ The phrase "patent monopoly" appears at various points. Under the statute, 35 U.S.C. § 261, a patent is a form of property right, and the right to exclude recognized in a patent is but the essence of the concept of property. *Schenck v. Nortron Corp.,* 713 F.2d 782, 218 USPQ 698 (Fed.Cir.1983).

■ The opinion says anticipation may be shown by less than "complete anticipation" if one of ordinary skill may in reliance on the prior art "complete the work required for the invention", and that "it is sufficient for an anticipation 'if the general aspects are the same and the differences in minor matters is only such as would suggest itself to one of ordinary skill in the art.' " Those statements relate to obviousness, not anticipation. Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim. *Soundscriber Corp. v. U.S.,* 360 F.2d 954, 960, 148 USPQ 298, 301 (Ct.Cl.1966). A prior art disclosure that "almost" meets that standard may render the claim invalid under § 103; it does not "anticipate." Though it is never necessary to so hold, a disclosure that anticipates under § 102 also renders the claim invalid under § 103, for "anticipation is the epitome of obviousness," *In re Fracalossi,* 681 F.2d 792, 215 USPQ 569 (CCPA 1982). The reverse is not true, for the need to determine obviousness presumes anticipation is lacking.

■ The opinion says that where a "combination" patent is involved the "linchpin" is whether the "aggregation produced a new or different result or achieved a synergistic effect." There is no support for those statements in the statute. There is no classification entitled "combination pat-

ents." Virtually every invention is a combination of elements or process steps, and synergism, or its equivalent "new and different result," is not *required* for patentability. *Chore-Time Equipment, Inc. v. Cumberland,* 713 F.2d 774, 218 USPQ 673 (Fed.Cir.1983); *Bowser, Inc. v. U.S.,* 388 F.2d 346, 156 USPQ 406 (Ct.Cl.1967). *See* Miller, "Factors of Synergism and Level of Ordinary Skill in the Pertinent Art in Section 103 Determinations," 8 APLA Jrl 321 (1980).

The opinion quotes a statement indicating that an invention meeting with great skepticism and great acclaim would nonetheless be unpatentable "if the elements comprising the invention are disclosed by an examination of the prior art." That cannot as stated be the law. Humans must work with old elements, most if not all of which will normally be found somewhere in an "examination of the prior art." Though all elements were old, the invention was held patentable precisely because experts were skeptical, for example, in *United States v. Adams,* 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, 148 USPQ 479 (1966).

■ The opinion says obviousness is established when "features that distinguish" the invention from the closest reference "are disclosed in analogous structures in which the features perform an identical function." It is not "features" but the subject matter of the invention "as a whole" that must be considered, 35 U.S.C. § 103. That features, even distinguishing features, are "disclosed" in the prior art is alone insufficient. As above indicated, it is common to find elements or features somewhere in the prior art. Moreover, most if not all elements perform their ordained and expected function. The test is whether the claimed invention as a whole, in light of all the teachings of the references in their entireties, would have been obvious to one of ordinary skill in the art at the time the invention was made. 35 U.S.C. § 103.

■ The opinion says that when the *three* factual inquiries listed in *Graham, supra,* have been answered, the objective evidence of nonobviousness need not be considered. That approach ignores *Graham's*

reference to a *fourth* inquiry, namely an inquiry into whatever objective evidence of nonobviousness (called "secondary considerations" and "indicia" in *Graham* ) may appear in the record. It is inappropriate and judicious to disregard any admissible evidence in any judicial proceeding. Hence, all relevant evidence on the obviousness issue must be considered before a conclusion is reached. *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 218 USPQ 871 (Fed.Cir.1983). Judge Clemon, however, considered and properly rejected the only such indicia apparently here raised, i.e., commercial success.

■ The opinion says that where "pertinent" and "any relevant" art was not considered by the Patent and Trademark Office (PTO), the presumption of validity is "severely weakened" and "eroded." As above indicated, there is virtually always "pertinent" and "relevant" art apparently unconsidered in the PTO and available to a patent challenger. The presumption does not change upon introduction of that art, or at any other time. It is upon introduction of art *more* pertinent or *more* relevant than that considered by the PTO (as happened here) that the patent challenger's burden may be more easily carried. Such art may in a proper case serve to fully meet that burden. *See SSIH Equipment S.A. v. ITC,* 718 F.2d 365, 218 USPQ 678 (Fed.Cir.1983).

■ The opinion also says that when "any relevant" non-considered art is introduced, the burden upon the patent challenger is thereby changed from a requirement for clear and convincing proof to one of proof by a mere preponderance. Proof, however, relates not to legal presumptions, but to facts. The patent challenger may indeed prove facts capable of overcoming the presumption, but the evidence relied on to prove those facts must be clear and convincing. Thus, the introduction of art or other evidence not considered by the PTO does not change the burden and does not change the requirement that that evidence establish presumption-defeating facts clearly and convincingly.

*The Trial Court's Action*

█ No error whatever occurred in granting Sears' motion for judgment NOV on the ground that the jury's conclusion of nonobviousness was without factual foundation supported by substantial evidence. The jury's legal conclusion disregarded (and cannot stand against a contrary conclusion resting on) prior art not considered in the PTO and far more pertinent than that the PTO did consider. Our independent consideration of the record under the above standard for grant of JNOV results in agreement with the trial court's action in which, without resolving credibility questions, he dismissed the relevant jury findings as unsupported by substantial evidence, and as findings that could not be made by reasonable minds in view of the evidence. We need not discuss the record in detail in view of findings not only unsupported by, but contrary to the evidence. As but one example of the latter, the jury finding that there was "no prior art" could not possibly stand in the face of the numerous clearly relevant prior art patents in the trial record. The interested reader is referred to the portions of Judge Clemon's opinion headed "(a) The Teaching(s) of the Patent In Suit," (b) "Scope And Content Of The Prior Art," and (e) "Obviousness," 599 F.Supp. at 236–244.

█ Acting in the interest of judicial economy, the trial court proceeded to decide, correctly, the infringement issue, while fully recognizing that infringement of an invalid patent can create no legal liability. The jury's findings that the accused curlers were literal and equivalent infringements were properly set aside as totally unsupportable in light of the record, and as findings that could not have been made by persons of reasonable minds. The reader is referred to the section of trial court's opinion headed "The Infringement Evidence," 599 F.Supp. at 246–250.

Because there was no error in: (1) submitting the obviousness-nonobviousness issue to the jury, while *recognizing that it is* ultimately a question of law decidable by the court in response to a motion for JNOV; (2) evaluating the prior art of record, with all reasonable inferences resolved in Connell's favor; (3) evaluating the jury's answers to relevant interrogatories without resolving credibility questions; (4) determining that the jury's answers to those interrogatories were not supported by substantial evidence; and (5) determining that "reasonable [sic] minded persons can only reach the conclusion" upon the facts of record that the inventions of the asserted claims and of those discussed in the testimony would have been obvious under § 103, the grant of Sears' motion for JNOV must be and is affirmed.

*Unenforceability*[1]

█ It is undisputed that Connell concealed from the PTO at least the five prior art patents he received from the patent lawyer he first consulted and who advised that his invention might not be patentable. Connell then sought new counsel, who filed and prosecuted the application and testified at the trial.

It is clear on the record that the PTO was told that tapered teeth of a particular shape were not disclosed in the prior art, that Connell knew teeth of that precise shape were disclosed in one of the concealed prior patents, and that, as the trial court indicated, the Connell patent would not have issued if that prior art disclosure had not been concealed.

The trial court did not disturb the jury's determination that the patent was not unenforceable. Judge Clemon stated, however, that had he been "sitting as trier of fact," he would have found otherwise, in

1. The issue has been presented and argued at trial and on appeal as related to enforceability, not fraud. Patents held nonenforceable can become enforceable upon discontinuance of the conduct which led to the holding. Fraud on the PTO may result in a holding of invalidity, the equivalent of permanent nonenforceability. In the present case, it would appear that the argu-

ment for nonenforceability rests on misrepresentation and failure *to disclose to the PTO*, conduct incurable with respect to the claims as presently drawn. In view of its treatment by the parties, the jury, and the trial court, however, we accept and dispose of the issue as presented.

view of the prosecution history of the application in the PTO:

> The jury found that the '199 patent in suit is enforceable. If sitting as the trier of fact, the Court would find otherwise; based on the dealings between plaintiffs' counsel and the Patent Office [sic]. However, the role of the court · on this issue is limited to determining whether the finding is supported by substantial evidence. The Court finds substantial, though not overwhelming, evidence for the jury's finding; and, accordingly it will not be disturbed.

Though unenforceability appears to have been thought a question of fact, and it is a question of law, the trial court's determination that there was substantial evidence in support of the jury's verdict on the question renders that erroneous label harmless. The legal conclusion on unenforceability, like that on fraud and all other legal conclusions, rests on fact findings and where, as here, the judge who heard all the evidence and observed the witnesses determined that the jury's findings were supported by substantial evidence in support of the conclusion, denial of the motion for JNOV was proper. To hold otherwise would be to render the jury a nullity.

Sears says the court's determination that the concealed art was more significant than that considered by the PTO is alone sufficient to make the question one of unclean hands and thus an equitable issue determinable only by a court. On that basis, it requests a remand to the trial court with instructions to award attorney fees incurred at trial. Sears' difficulty, however, is twofold. The merger of law and equity dissolved the distinction once governing issues submissible to a jury, and Sears has not shown that the verdict relating to enforceability was not supported by substantial evidence.

The counsel who represented Connell in prosecuting the application testified that in failing to disclose prior art he believed he was following the standard of candor due the PTO at the time. Though the record would have benefitted from a citation of the evidence the trial court viewed as supporting, it may well have been that testimony of counsel, doubtless credited by the jury as establishing a lack of intent to improperly mislead the PTO.

Sears' brief cites recent cases, dealing with the current and uncomprising duty of candor and good faith set forth in 37 CFR § 1.56(a). It is regrettable but true that the present standard was not earlier recognized, promulgated, and enforced. The earlier standard described by the witness apparently led him to find room for the kind of gamesmanship practiced in connection with the Connell application pre–1969, as reflected in his testimony. Nonetheless, the trial court and we are precluded by the jury's verdict, the standard governing JNOV, and the need to preserve the right to trial by jury, from acting on our own assessment of the credibility of that testimony.

Though the conduct here was egregious, and might well have been so considered under earlier standards, we are not at liberty either to apply the present standard retroactively in this case, or to overturn the refusal to disturb the jury's determination on enforceability. That refusal was entered by a judge who had presided at the trial, had observed the witnesses, and had demonstrated a willingness to set aside those jury determinations clearly not supported by substantial evidence. That he, and we, if at liberty to do so, might have found facts rendering the patent unenforceable, or might have applied 37 CFR § 1.56(a) as a codification of earlier case law, *see True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 202 USPQ 412 (10th Cir.1979), are considerations not at issue. Application of personal predilections to achieve a result oriented thereby is not the role of judges. Nor are we free to impose a policy that would render inapplicable to patent cases motions for directed verdict, motions for JNOV, and jury instructions on the law, any more than we are to impose such a policy on any other type of case in which jury verdicts on the whole case are by the rules of our jurisprudence and the Constitution authorized.

Sears, while asserting unenforceability for fraud as a basis for attorney fees, makes no effort to establish that reasonable persons could not have made fact findings underlying the conclusion reached by the jury on enforceability. Relying entirely on the sole fact of nondisclosure of known art, it has not demonstrated that reasonable persons could not reasonably have found an absence of the intent element of fraud. Having been shown no basis on which we can reverse the refusal to disturb the jury's determination, we deny the request for remand for determination of Sears' attorney fees incurred before this appeal was filed.

### The Declaratory Judgment

 No claim of a patent declared invalid can be enforced, absent denial of a fair opportunity in the litigation that resulted in the declaration and a favorable outcome in a subsequent suit. Though only claims 1 and 5 were allegedly infringed, the entire patent was declared invalid in response, apparently, to Sears' counterclaim for declaratory judgment that the patent was invalid. Neither party has questioned on appeal the propriety of a declaration that a "patent" is invalid when all claims were not separately considered, each on its merits. The statute, however, requires that courts refrain from applying to claims that do not form part of the record the invalidity conclusion applied to claims that do. Each claim must be presumed valid independently of the validity of any other claim. 35 U.S.C. § 282.

 The record has accordingly been reviewed to determine the claims subject to the declaratory judgment. Because Connell restricted, just before trial, its complaint for infringement to claims 1 and 5, most of the trial testimony centered on those claims. Nonetheless, jury interrogatories included those asking whether "any of the claims" were infringed, whether any of the earlier patents were "prior art to the '199 patent," whether "plaintiffs' invention presented something new and different," and whether plaintiffs filed suit in a "good . faith belief that all the claims ... were valid." The trial court, though stating that only claims 1 and 5 were involved, and

granting the motion on the ground that the inventions set forth in those claims would have been obvious, spoke at other points in broader terms indicating that all claims were invalid. There was substantial testimony in which claims 3 and 4 were compared with the prior art and from which the declaratory judgment that the patent was invalid may be seen as encompassing those claims.

Because dependent claim 2 was not before the trial court, by way of testimony or otherwise, and because that claim is not before this court, there is no basis on which we could properly rest a conclusion that that claim is invalid.

Though we are not at liberty to consider *de novo* the validity or invalidity of claim 2, and the declaratory judgment must be modified to remove that claim from its effect, preservation of claim 2 here in response to 35 U.S.C. § 282 raises no implication respecting its validity or invalidity. The claim is directed to the addition of rotating means to the structure of invalid claim 1. It may be expected, however, that our affirmance of the JNOV will substantially impede if not end Connell's propensity for filing suit on the '199 patent, or for continuing to prosecute the case now pending in the trial court. (*Connell v. K–Mart, Inc.,* No. 82–C–1261–M (N.D.Ala.)).

### (2) *Costs of Trial*

Sears emphasizes that part of Rule 54(d) Fed.R.Civ.P. reading "costs shall be allowed as of course to the prevailing party," and cites cases requiring compelling circumstances to justify equal apportionment of costs. Connell emphasizes the next phrase in Rule 54(d) reading "unless the court otherwise directs." Because no reason was cited for the March 4, 1983 Order that each party pay its own costs, neither party is able to support their respective arguments that an abuse of discretion did and did not occur.

Sears cites cases indicating that an abuse lies in disregarding the presumption that costs should be awarded to the prevailing party when there has been no showing or

finding of circumstances sufficient to overcome the presumption. It has been said that cost awards to winners are regarded as a fair price losers pay for using the judicial system, and that courts should deny costs to winners only when the award would be unjust. *See Sun Ship, Inc. v. Lehman,* 655 F.2d 1311, 1315 (D.C.Cir.1981).

 Connell sought and obtained costs following the jury verdict. The JNOV taxed costs in favor of Sears. Costs apparently remain taxed against but unpaid by Connell. As above indicated, the March 4, 1983 Order provided that each party would pay its own costs. Sears has moved in the trial court for an order retaxing costs against Connell and that motion is currently pending in that court.

The matter being one committed in the first instance to the sound discretion of the trial court, we will not in this case substitute our judgment at this stage with respect to the award of costs connected with the trial. The March 4, 1983 order must be vacated, and the question of costs must be remanded, so that the trial court may deal with Sears' currently pending motion. The trial court is of course at liberty to enter such order as it may deem just, including one reinstating either its March 4, 1983 Order or the award of costs made in its JNOV. If the trial court elects to reinstate the March 4, 1983 Order, it is anticipated that reasons for doing so will be entered on the record to facilitate review if reinstatement of that order should be appealed.

### Costs, Attorney Fees, and Sanction on Appeal

 This is but one of five lawsuits filed on the '199 patent by Connell. Three were settled before trial for $30,000, $42,500, and $100,000, respectively. Counsel for defendants in all three of those suits testified in this case that they were convinced the Connell patent was invalid, but that the settlements were entered solely because those amounts were far less than the cost of litigation.

In finding no commercialization of Connell's invention and no commercial success whatever in the then entire 13 year life of the patent, the trial court noted that the only "success" Connell has had was in obtaining money in exchange for filing and then dropping lawsuits.

Before filing his application, Connell was told by patent counsel that the invention might not be patentable, and was told of very close, almost identical prior art supporting that opinion. Connell obtained new counsel and concealed that art from the PTO. As the trial court correctly observed, submission of that art would have expanded the PTO's view beyond the two patents it cited in response to Connell's limitation of his claims to a hair teasing and unsnarling device. Disregarding that limitation, Connell sued for infringement by hair curling devices virtually identical with prior art curlers. Informed well before trial of all the prior art now of record, and of the effect of his non-disclosure to the PTO, Connell nonetheless proceeded with the trial. The entire scenario thus represents an abuse of the patent system and the judicial process.

Continuing to abuse the judicial process, Connell filed and prosecuted this appeal. Connell's main brief on appeal begins with 25 pages on which portions of the testimony of all witnesses is repeated in counsel's words. The next three pages repeatedly set forth the unchallenged standard for grant of JNOV. The next three set forth the unchallenged authority for submission of the obviousness issue and interrogatories to the jury. The next two constitute the sole effort of Connell to demonstrate error on obviousness, and that effort consists only in citation of a legal opinion of nonobviousness given from the witness stand by the patent lawyer who prosecuted the Connell application. The brief nowhere discusses the jury's answer that there was "no" prior art. It calls the legal conclusion of obviousness a "finding."

The next four pages of Connell's main brief quote excerpts from testimony about an unsnarling "function" said to constitute substantial evidence on which a finding of infringement could be made. The last four pages repeat the JNOV standard, charge

the court with denying the constitutional right to trial, substitute a mention by the court of the plaintiff's burden on infringement for the lack of substantial evidence standard clearly employed by the court, and argue that the Connell's tangle-free function was nonobvious, disregarding the structural elements of the claims in suit and the relationship of those elements to the prior art or the accused curlers.

Connell's main brief is essentially that filed in the trial court (including an erroneous statement that the jury found the invention obvious). That practice is not in itself impermissible, but Connell should not be surprised if it results in the same outcome. Sole reliance on a legal conclusion of a lawyer witness, while disingenuously describing it as factual evidence sufficient to preclude JNOV, results in a total failure to present a rational basis for reversal on the obviousness issue.

Connell's reply brief repeats the unchallenged standard for grant of JNOV, again argues obviousness as a fact finding matter, accusing the court of substituting its own "finding," argues that courts should never grant JNOV after submitting the obviousness issue to a jury, and again emphasizes patent counsel's legal conclusion as substantial evidence. In discussing infringement, the brief disparages nine prior patents as disclosing curlers which lacked the "non-tangling concept" of Connell, but nowhere applies the structural elements of the claims to the accused curlers.

Connell's briefs here continue its failed effort before the trial court (though successful before the jury) to improperly carry water on both shoulders. Connell deprecates the prior art devices as curlers, not teasing and unsnarling instruments; then, in asserting infringement, Connell insists that the Sears curlers (which are substantially identical to the prior art) "could be used" as teasing and unsnarling instruments. The trial court pointed to the legal impropriety of treating the structural claims in suit one way when considering validity and another when considering infringement, citing *Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.,* 431 F.2d 539, 544, 166 USPQ 454, 459 (5th Cir.1970).

Connell's repetition of its insupportable approach here, as though the trial court's opinion, *Sterner,* and the impropriety did not exist, reflects a regrettable lack of candor due this court.

Connell's reply brief contains a statement that this was the first patent trial for Connell's counsel and for the trial judge. That fact, if true, does not remove the impropriety of the present appeal. Inexperience does not affect the ability to read and apply the law to the simple facts in this record; nor does it justify the filing of an appeal when no basis for reversal in law or fact can be or is even arguably shown.

The definition of what constitutes a frivolous civil appeal is difficult. Courts must guard against an oversensitivity to what may be only an apparent abuse. It is clear that appeals having a small chance of success are not for that reason alone frivolous. One may legitimately argue, for example, that even overwhelming contrary precedent should be overruled or distinguished. In the present case, however, Connell disputes no law or precedent or the applicability of either. Its effort to show the presence of substantial evidence on nonobviousness in support of the jury's verdict is limited, as above indicated, to a lawyer's opinion statement from the witness stand that he thought the inventions nonobvious, while totally disregarding the presence in the record of unchallenged evidence destroying support for that opinion, ignoring the difference between fact evidence and a legal conclusion, and making no mention or recognition of the fundamental rule in American civil jurisprudence underlying Rule 50, i.e., that legal questions are ultimately reserved to the judge who bears a final responsibility for upholding the law when a jury's verdict is challenged as unsupported by substantial evidence.

Whatever the events in the district court, we are duty-bound to guard our segment of the judicial process against abuse. The present appeal was filed and maintained in the face of an unassailably proper grant of a judgment NOV, a grant supported and explained by an exhaustive opinion indicat-

ing the error-free nature of the conclusion on obviousness in light of the prior art. The impossibility of citing fact evidence in the record to support even minimally the jury findings relating to that issue is reflected in Connell's briefs. No legally cognizable error on which a reversal of the appealed judgment could possibly be based appears anywhere in the record, in Connell's briefs, or in the oral argument. Indeed, if ever there were a case in which a grant of JNOV was necessary and compelled, it is this case. The appeal is frivolous.

Connell was informed, on docketing the present appeal, of our views as expressed in *Asberry v. U.S. Postal Service,* 692 F.2d 1378 (1982). In the face of that notice, Connell elected to proceed with the appeal.

## DECISION

The grant of JNOV is affirmed. The declaratory judgment that the '199 patent is invalid is modified to exclude claim 2 from its effect. The Order of March 4, 1983 is vacated and the question of costs at trial is remanded. Under the provisions of Rule 38, Fed.R.App.P., and 28 U.S.C. § 1912, Sears is awarded double its costs on this appeal. In addition, Connell is ordered to pay the sum of $500 to Sears. Though strongly inclined to hold appellate counsel jointly and severally liable with Connell for the payment to Sears, the court has resolved doubt against that inclination for the sole reason that, a favorable jury verdict having been obtained, the recognized deference due jury verdicts appears to have exerted undue influence on the election to appeal.

AFFIRMED IN PART, MODIFIED IN PART, VACATED AND REMANDED IN PART.